STEGAWSKI, APPELLANT, *v.*
CLEVELAND ANESTHESIA GROUP, INC.
ET AL., APPELLEES.

(No. 52320—Decided
August 10, 1987.)

*Richard D. Panza* and *Charles J. Pawlukiewicz,* for appellant.

*Benesch, Friedlander, Coplan & Aronoff, David A. Schaefer* and *John E. Martindale,* for appellees.

PATTON, J. Christopher Stegawski, M.D. appeals the judgment of the Cuyahoga County Court of Common Pleas granting summary judgment to defendants-appellees Cleveland Anesthesia Group, Inc., Gary S. Freeman, M.D., Gerald Goldberg, M.D. and Joyce C. Hardaway, M.D. Appellant also challenges various discovery orders entered by the court and the manner in which the court regulated discovery. The facts giving rise to this appeal are as follows.

On July 2, 1984, appellant Christopher Stegawski, M.D. filed a complaint against Cleveland Anesthesia Group, Inc. (hereafter "CAG"), Gary S. Freeman, M.D. (hereafter "Freeman"), Gerald Goldberg, M.D. (hereafter "Goldberg"), Joyce C. Hardaway, M.D. (hereafter "Hardaway") and the Mt. Sinai Medical Center of Cleveland (hereafter "Mt. Sinai").[1] Appellant alleged, *inter alia,* that the defendants fraudulently induced him

[1] CAG, Freeman, Goldberg and Hardaway are collectively referred to as "appellees." Mt. Sinai is not a party to this appeal.

to accept employment with CAG to provide anesthesia services at Mt. Sinai. In his complaint, appellant alleged that Freeman, acting individually, as president of CAG and as director of the Department of Anesthesiology of Mt. Sinai, represented to appellant that if he accepted employment with CAG and obtained board certification in anesthesiology, appellant would be made a shareholder-partner in CAG.

Mt. Sinai filed a motion to dismiss or, in the alternative, for summary judgment on September 4, 1984. Mt. Sinai's motion was granted in late April or early May 1985, and it was dismissed from the action.

On or about March 13, 1985, appellant served his first request for production of documents to CAG, Mt. Sinai, Freeman, Goldberg and Hardaway. Appellant additionally sent his first set of interrogatories to Freeman, Goldberg, Hardaway and CAG on that same date. The appellees filed a motion for a protective order from appellant's discovery request, as did Mt. Sinai. The appellees contended that appellant's request was voluminous and that the information which appellant was seeking was privileged, irrelevant and generally objectionable. Appellees requested that they, at the minimum, have more time to study and review appellant's interrogatories. Appellees' motion for a protective order was held in abeyance by the court pending further order of the court.

On June 25, 1985, appellant filed a notice *duces tecum* to take the deposition of Mt. Sinai's records custodian on July 2, 1985 and a notice to take the deposition of Barry M. Spero, the president of Mt. Sinai at the time, on July 3, 1985.

On June 27, 1985, Mt. Sinai filed a motion to quash the subpoenas served upon Spero and Mt. Sinai's records custodian and also moved for a protective order. Mt. Sinai claimed that discovery from Mt. Sinai and Spero was irrelevant as Mt. Sinai had been removed from the case and the remaining claims involved CAG and its shareholders. Mt. Sinai also argued that appellant's *duces tecum* request to the custodian of records of Mt. Sinai was burdensome and oppressive.

On July 2, 1985, appellees also moved for a protective order regarding appellant's attempted discovery of information from Mt. Sinai. The appellees claimed that the information sought was irrelevant and not reasonably calculated to lead to admissible evidence.

On July 3, 1985, the court granted Mt. Sinai's motion to quash and ordered that no documents needed to be produced by Mt. Sinai.

On September 9, 1985, appellant filed a notice to take the depositions of Dr. Bechara Hatoum, Dr. Lina Bigornia, Dr. David Goldstein, Dr. Douglas Mayers, Dr. Znbeida Charania, Dr. Luke Cheriyian, Dr. Morris Mandel, Dr. Scott Boydman and Ms. Dorothy Timms. Appellees responded to these notices and the subpoenas that were issued by filing a motion to quash certain of these subpoenas. The appellees maintained that all of these individuals except Dr. Cheriyian were employees of CAG although Timms was primarily an employee of Mt. Sinai. The appellees further argued that none of the proposed deponents had any involvement in the interviewing and hiring of the appellant. The appellees sought a protective order because of the lack of reasonable notice to the appellees, appellant's questionable motives in deposing these individuals, and the lack of obtainable, relevant information.

On October 25, 1985, the court quashed the subpoenas of Timms and the remaining non-party witnesses for their scheduled dates. Appellant was barred from taking the deposition of Timms. Although appellant was per-

mitted to take the depositions of the other non-party witnesses, the court limited the scope of inquiry at those depositions to background information and questions as to representations made to such witnesses regarding prospective employment with CAG by any agent of CAG.

Also, on October 25, 1985, appellant filed a motion to compel discovery. Appellant wanted the court to order appellees (1) to produce documents requested by appellant; (2) to answer interrogatories propounded by appellant; and (3) to answer questions asked by appellant during their depositions.

With leave of court, appellees filed a motion for summary judgment on March 4, 1986. Appellant opposed this motion, contesting that genuine issues of material fact existed. The appellees, with leave of court, filed a reply brief and a supplemental memorandum in support of their motion for summary judgment.

On June 27, 1986, the court granted appellees' motion for summary judgment. The appellant filed a timely notice of appeal from this judgment.

The instant case arises from the circumstances surrounding appellant's employment with CAG. CAG is a small group of anesthesiologists who render medical care primarily to the patients of Mt. Sinai. At all times pertinent to this action, Dr. Freeman was a shareholder in, and president of, CAG; Dr. Goldberg was a shareholder in, and secretary of, CAG; and Dr. Hardaway was a shareholder in, and treasurer of, CAG. In the late summer, early fall of 1981, appellant placed an advertisement in a professional journal in an effort to secure employment as an anesthesiologist. At the time, he was working at St. Vincent Charity Hospital. Dr. Freeman, the president of CAG and a shareholder in the corporation, responded to appellant's advertise-ment, and an interview with appellant was arranged for August 1981.

At the August 1981 interview, appellant spoke with both Goldberg and Freeman, although the majority of the two-hour interview was spent with Freeman. According to the appellant, Freeman represented to him during the course of this interview that once the appellant was board certified in anesthesiology, appellant would become a shareholder in CAG. Whether this statement was made is the center of the instant dispute. Freeman maintains that when the appellant inquired about shareholder status, he gave him the standard reply which he gave to other prospective candidates. He would tell the interviewees that board certification was a prerequisite to becoming a shareholder, but it was not sufficient in and of itself. Freeman also testified in his deposition that it was impossible to make a determination about a person's value to the corporation on the basis of an initial meeting; the members of the corporation would need to see how the new employee worked and got along with the surgeons. Thus, according to Freeman, shareholder status would be discussed later.

Freeman stated that he could not recall his exact words to appellant. Freeman testified that appellant was never considered for, or promised, shareholder status.

At this interview, Freeman offered appellant a position of employment with CAG to provide anesthesiology services to Mr. Sinai. Freeman and the appellant got into a discussion about appellant's starting salary. Freeman offered appellant a salary of $85,000 in addition to other benefits; appellant requested $100,000. The interview concluded with appellant not accepting the $85,000 figure.

In early November 1981, appellant contacted Freeman by telephone. This

was the first contact appellant had had with Freeman since the August 1981 interview and negotiations. During the phone conversation (that lasted ten to fifteen minutes), appellant was informed that the position he originally was seeking had been filled. Freeman made a new offer of employment to appellant and told him that CAG could not afford an initial salary of $85,000. Appellant accepted a salary of $72,500 because he understood that it was Freeman's "time to set the amount." No mention of shareholder status was made during that phone conversation.

In December 1981, appellant received a copy of an employment agreement between himself and CAG for a one-year term commencing December 14, 1981 with automatic renewal for a one-year period unless written notice was given to the other within a specified time. This employment contract was "intended to constitute a memorialization of [appellant's] professional relationship and . * * * employment agreement with Cleveland Anesthesia Group, Inc."

Appellant was surprised when he got the December 1981 written contract because he did not recall talking about it earlier and was surprised to discover that the employment agreement did not make any reference to his having the opportunity to become a shareholder once he became a board certified anesthesiologist. Prior to signing the December 1981 agreement, appellant met with Freeman and inquired about why everything that had been talked about previously was not contained in the agreement. According to appellant, Freeman assured him that all the representations he had made before were still intact and that the contract was merely for the corporation's records.

The December 1981 agreement was verbally renewed for another year. In April 1983, appellant became board certified. In July 1983, appellant was given a new employment contract for a period commencing July 1, 1983 and ending June 30, 1984. Appellant averred in his affidavit that he was required to sign this agreement immediately, without notice that he was going to have a new employment agreement and without notice of its terms. The letter agreement embodying this July 1, 1983 through June 30, 1984 employment period was dated July 1, 1983 and signed by appellant on July 8, 1983.

In approximately October or November 1983, appellant approached Freeman about revising his employment contract. After about a month to a month and one half of negotiating about how CAG could make the employment agreement more desirable to appellant, appellant mentioned Freeman's alleged promise that the appellant would become a shareholder once he was board certified. Since the appellant had obtained this certification, appellant maintained that he was entitled to become a shareholder. This discussion in early December 1983 was the first mention appellant had made to Freeman since he had been hired about being a shareholder. On or about December 17, 1983, appellant was presented a new employment agreement. Appellant refused to sign this agreement because it made no mention of shareholder status.

The negotiations continued. The appellant maintained that he would never agree to a new contract unless he became a shareholder. Subsequently, appellant was provided with another employment agreement in January 1984, which was CAG's final offer of employment. If appellant did not sign this final offer, appellant's employment with CAG would expire on June 30, 1984 and appellant would be terminated effective July 1, 1984. As this final offer did not contain any pro-

vision for appellant to become a shareholder, appellant declined the offer.

Appellant fulfilled his July 1983 employment agreement with CAG and was terminated as notified on June 30, 1984. Subsequently, this lawsuit was initiated by appellant, which resulted in all the defendants being granted summary judgment. Appellant only appeals from the summary judgment entered on behalf of CAG, Dr. Freeman, Dr. Goldberg and Dr. Hardaway and assigns three errors for our review:

"I. The trial court committed prejudicial error by granting summary judgment in favor of appellees.

"II. The trial court committed prejudicial error by granting summary judgment and denying appellant his right to a trial by jury.

"III. The trial court committed prejudicial error in the manner in which it regulated discovery."

I

Appellant's first two assignments of error are interrelated and, therefore, will be addressed together. Appellant argues that the court erred in granting summary judgment on behalf of the appellees. This contention does not have merit.

A court reviewing the granting of a summary judgment must follow the standard set forth in Civ. R. 56(C), which specifically provides that before summary judgment may be granted it must be determined that:

"* * * (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

"* * * It is axiomatic that summary judgment shall be rendered only when the movant has shown that there is no genuine issue as to any material fact. Civ. R. 56(C). Further, upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion. * * *" *Campbell* v. *Hospitality Motor Inns, Inc.* (1986), 24 Ohio St. 3d 54, 58, 24 OBR 135, 138, 493 N.E. 2d 239, 242. The Ohio Supreme Court stated in *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 2-3, 24 O.O. 3d 1, 2, 433 N.E. 2d 615, 616:

" 'Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. *It must be awarded with caution,* resolving doubts and construing evidence against the moving party, and *granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * *' * * *"* (Emphasis added; citations omitted.)

Attached to appellees' motion for summary judgment were (1) excerpts from appellant's deposition; (2) excerpts from Dr. Freeman's deposition; (3) a copy of appellant's initial employment agreement which commenced December 14, 1981; (4) a copy of appellant's second written employment agreement embodied in a letter to appellant dated July 1, 1983; and (5) a letter to Dr. Freeman from the appellant dated February 29, 1984, in which appellant requested a written response from Dr. Freeman regarding his decision to terminate appellant's employment. Appellant initially objects to the evidentiary nature of these exhibits and contends that the court erred by granting the motion for summary

judgment based upon these documents.

Civ. R. 56(C) sets forth the type of documents which may be used to support a motion for summary judgment. The rule provides in part:

"* * * The adverse party prior to the day of hearing may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"

Failure to move to strike or otherwise object to documentary evidence submitted by a party in support of, or in opposition to, a motion for summary judgment waives any error in considering that evidence under Civ. R. 56(C). See *Brown* v. *Ohio Cas. Ins. Co.* (1978), 63 Ohio App. 2d 87, 17 O.O. 3d 267, 409 N.E. 2d 253; *Rodger* v. *McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App. 3d 256, 258, 8 OBR 347, 349, 456 N.E. 2d 1262, 1265, at fn. 7.

Although the record indicates that the documentary evidence submitted by the appellees was not authenticated by independent proof in the record and that the photostatic copies of portions of the deposition transcripts did not bear the certification of the officer before whom the depositions were taken, the appellant failed to move to strike this evidence and failed to otherwise object.[2] Accordingly, the court in its discretion could review this docu-

mentary evidence, and appellant has waived any error committed by the court in considering appellees' exhibits.

Appellant further argues that assuming *arguendo* that appellees' evidence is properly reviewable by this court, the evidence presented by him demonstrates a genuine issue of material fact and, therefore, summary judgment was improvidently granted to appellees. Appellant maintains that he was fraudulently induced into entering into an employment agreement with CAG. The elements required to establish a cause of action for fraudulent inducement are set forth in *Sanfillipo* v. *Rarden* (1985), 24 Ohio App. 3d 164, 166, 24 OBR 253, 255, 493 N.E. 2d 991, 994: "* * * (1) a false representation concerning a fact material to the transaction; (2) knowledge of the falsity of the statement or utter disregard for its truth; (3) intent to induce reliance on the misrepresentation; (4) reliance under circumstances manifesting a right to rely; and (5) injury resulting from the reliance. * * *" Cf. *Friedland* v. *Lipman* (1980), 68 Ohio App. 2d 255, 22 O.O. 3d 422, 429 N.E. 2d 456 (describing the elements of fraud).

In *Friedland, supra,* this court discussed the burden a defendant must sustain on a motion for summary judgment in a fraud action and stated:

"A trial court may grant summary judgment to a defendant upon a claim of common law fraud only where, after construing the evidence before it most strongly in the plaintiff's favor, it determines that reasonable minds could come to but one conclusion that there exists no genuine issue as to at least one of the material factual ele-

---

[2] Appellant claims that he did object to appellees' use of the deposition transcripts. The record indicates that appellant's objections pertained to allegations that appellees

"neglected to cite relevant portions of pertinent depositions" and did not address the authenticity or certification of the documents.

ments of a common law fraud and, as a result, the defendant is entitled to judgment as a matter of law." *Id.* at paragraph two of the syllabus.

Appellant maintains that the issue before the trial court involved only one of the elements necessary to establish a cause of action for fraudulent inducement; that is, the existence of a false representation concerning a fact material to the transaction. Appellant maintains that Dr. Freeman represented to him that the only prerequisite for him to be a shareholder was that he become a board-certified anesthesiologist. Appellees argue that Freeman never told appellant that once he became board certified he would be a shareholder in CAG. Appellees further claim that the parol evidence rule bars appellant's allegations.

Ordinarily, the parol evidence rule does exclude evidence of prior or contemporaneous statements contradicting or varying the terms of a written contract or other document which apparently expresses the complete agreement of the parties. *Charles A. Burton, Inc.* v. *Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E. 2d 265. However, a party may proffer the introduction of contemporaneous oral representations when fraud is alleged. *Walters* v. *First Natl. Bank of Newark* (1982), 69 Ohio St. 2d 677, 681, 23 O.O. 3d 547, 549, 433 N.E. 2d 608, 611; *Finomore* v. *Epstein* (1984), 18 Ohio App. 3d 88, 89, 18 OBR 403, 405, 481 N.E. 2d 1193, 1195. This exception includes when a fraudulent misrepresentation is made to induce a party to enter a contract. *Walters, supra;* see, also, *AmeriTrust Co.* v. *Murray* (1984), 20 Ohio App. 3d 333, 20 OBR 436, 486 N.E. 2d 180; *BancOhio Natl. Bank* v. *Coleman* (Nov. 29, 1984), Cuyahoga App. No. 48108, unreported. In the instant case, appellant makes just such an allegation. Furthermore, the representation at issue would add to the contract, not vary or contradict the existing terms.[3]

Notwithstanding the admissibility of parol evidence in the instant case, the record still reveals that no genuine issue of material fact exists regarding the alleged representation. Even if the representation were made, as the appellant contends in the August 1981 interview, the appellant declined the initial offer of employment and did not accept the salary of $85,000 which had been offered to him. When the appellant and Dr. Freeman did reach an employment agreement in November 1981, there was no further discussion about shareholder status. The appellant accepted the salary of $72,500 offered to him because he recognized that it was Dr. Freeman's "turn" to establish the amount of his salary.

In December 1981, appellant received a copy of the employment agreement between himself and CAG for a term beginning December 14, 1981. Appellant reviewed the agreement and saw that the agreement did not state that once appellant became a board-certified anesthesiologist, he could become a shareholder in CAG. Prior to signing the December 1981 employment agreement, the appellant questioned Dr. Freeman as to why everything they had talked about previously was not contained in the agreement. Dr. Freeman reportedly assured the appellant that all representations he had made previously were still valid. Despite this assurance, there is nothing in the record to indicate that the issue of shareholder status was one of the specific representations made to the appellant when appellant accepted the November 1981 offer. The August 1981 offer, once rejected, was terminated, and any representations

---

[3] Appellees admit that the employment agreements do not contain an integration clause.

made at that point were also terminated and of no effect. Furthermore, appellant acknowledges that no promises of shareholder status were made in the November 1981 employment discussions.

Appellant went ahead and signed the December 1981 employment agreement with CAG that made no reference whatsoever to shareholder status. It was verbally renewed for another year. Appellant did not mention the alleged August 1981 promise.

In April 1983, the appellant became board certified. Subsequently, appellant was presented with another written employment agreement in July 1983 which made no mention of appellant's becoming a shareholder. The appellant signed the agreement although appellant contends he signed it under duress. There is nothing in the record to indicate that any action taken by CAG or its agents, if taken at all, was of a coercive nature. Furthermore, the letter agreement embodying the July 1, 1983 through June 30, 1984 employment period was dated July 1, 1983 and signed by appellant on July 8, 1983. Dr. Freeman testified that he gave the appellant this July 1983 agreement close to the first of July or a day or two later.

The record further indicates that the appellant approached Dr. Freeman about revising his employment agreement in October or November 1983. Approximately a month to a month and one half of negotiations passed before the appellant first mentioned Dr. Freeman's alleged August 1981 promise that the appellant would become a shareholder once he was board certified. Thus, over two years had passed before the appellant mentioned this representation which, if made at all, was terminated by appellant's non-acceptance of the August 1981 offer.

Construing the evidence in a light most favorable to the appellant, the non-movant, reasonable minds could only conclude that the representation regarding shareholder status, if made at all, was terminated by the August 1981 rejection and was not subsequently renewed. Since there was no genuine issue of material fact, the appellees, as movants, were entitled to judgment as a matter of law.

Appellant's first two assignments of error are not well-taken.

## II

For his third assignment of error, appellant contends that the court committed prejudicial error in the manner in which it regulated discovery. Appellant specifically claims that the court, by its orders and failure to intervene (1) denied appellant access to documents and witnesses, (2) unjustifiably restrained the scope of examination of some deponents, and (3) allowed appellees to conceal information. Appellant argues that the court prematurely granted summary judgment because the appellant did not have the opportunity to completely develop his case.

Ohio policy favors the fullest opportunity to complete discovery. *Rossman* v. *Rossman* (1975), 47 Ohio App. 2d 103, 110, 1 O.O. 3d 206, 210, 352 N.E. 2d 149, 153. However, the trial court has discretion in controlling the discovery process. *State, ex rel. Daggett,* v. *Gessaman* (1973), 34 Ohio St. 2d 55, 63 O.O. 2d 88, 295 N.E. 2d 659. See, also, *Treinish* v. *Legalsystem, Inc.* (Feb. 21, 1985), Cuyahoga App. No. 48566, unreported, at 4 ("A trial judge has broad discretion with regard to regulating the time and place of discovery."). In exercising its discretion in a discovery matter, the court balances the relevancy of the discovery request, the requesting party's need for the discovery, and the hardship upon the party from whom the discovery was requested. *Heat & Control, Inc.* v. *Hester*

*Industries, Inc.* (C.A. Fed. 1986), 785 F. 2d 1017, 1022, 1024. "* * * An appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights. * * *" (Footnote omitted.) *Rossman, supra,* at 110, 1 O.O. 3d at 210, 352 N.E. 2d at 153-154; *Smith* v. *Klein* (1985), 23 Ohio App. 3d 146, 151, 23 OBR 387, 393, 492 N.E. 2d 852, 858.

Appellant first contends that his substantial rights were affected when the court erroneously granted Mt. Sinai's motion for a protective order and quashed the subpoenas of Mt. Sinai's custodian and president, Barry Spero. This contention is without merit. There is no evidence in the record for us to conclude that the court abused its discretion in entering this order while Mt. Sinai was dismissed from the case. The court could have reasonably concluded that the object of appellant's discovery requests to Spero and Mt. Sinai was irrelevant and not likely to lead to admissible evidence, and the request could have been reasonably found by the court to have been burdensome and harassing.

Appellant next claims that the court erred by limiting the scope of appellant's examination of several non-party witnesses to only background information matters and questions as to representations made to such witnesses by any agent of CAG regarding prospective employment with CAG. Appellant claims that he was effectively foreclosed by this order from discovering any admissions made by Dr. Freeman or other agents of CAG regarding representations made to appellant and other first generation American physician employees of CAG.

The court did not abuse its discretion by limiting the scope of the deposi-tions of these witnesses. The crux of appellant's case focuses on an alleged representation made by Dr. Freeman to appellant during the interview phase. Appellant, by this order, was able to question these non-party witnesses about representations that might have been made to them during their interview processes. Second, appellant was able to depose Dr. Freeman, the man allegedly responsible for making the promise of shareholder status to appellant if appellant became board certified.

Finally, appellant challenges appellees' response to appellant's first request for production of documents. The record indicates that the appellant addressed these alleged incomplete, ineffectual and edited responses in a motion to compel discovery filed with the court on October 25, 1985. The court did not rule on appellant's motion to compel prior to its decision to grant appellees' motion for summary judgment. The appellant claims that this was erroneous because he was not able to complete his discovery.

Appellant's argument is again meritless. The date that appellant filed his motion to compel was the date of the court-imposed discovery deadline, which had been extended at appellant's request. Furthermore, Civ. R. 56(F) provides appellant with a remedy. Civ. R. 56(F) authorizes the trial court to delay decision on a summary judgment motion while the non-moving party gathers necessary rebuttal data:

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." See, also, *Gates Mills Investment Co.* v. *Pep-*

per *Pike* (1978), 59 Ohio App. 2d 155, 13 O.O. 3d 191, 392 N.E. 2d 1316; *Whiteleather* v. *Yosowitz* (1983), 10 Ohio App. 3d 272, 10 OBR 386, 461 N.E. 2d 1331.

The record before us contains no affidavits filed by appellant asserting that he could not present facts essential to justify his opposition, nor does the record contain any request for a continuance to permit completion of discovery or to allow for a ruling on appellant's motion to compel.

Absent compliance with the provisions of Civ. R. 56(F), the error was not preserved for appeal, *United Telephone Co. of Ohio* v. *Telephone Answering Service of Lima, Inc.* (Nov. 22, 1982), Allen App. No. 1-81-13, unreported.

Accordingly, appellant's third assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and PRYATEL, J., concur.