JOURNAL ENTRY and OPINION
Plaintiff-appellant, Laverne Moore, is appealing the trial court's grant of summary judgment in favor of defendants-appellees Komatsu Ltd. and Komatsu America Corporation (hereinafter "Komatsu") and G S Metal products Co., Inc. (hereinafter "G S Metal).[1] For the following reasons, we affirm.
Appellant was injured while working on a power press manufactured by Komatsu Ltd. and sold by Komatsu America corporation, in the course of her employment at G S Metal. In 1981, G S Metal ordered the power press from Newell Industrial, a distributor of Komatsu presses. Newell told Komatsu that G S Metal wanted to purchase a press operated by a foot switch. Komatsu only made presses operated by dual palm buttons, but sometimes wired a press with a foot switch circuit at the factory. No presses with a foot switch circuit were in stock, so Newell purchased a press without a circuit. Newell hired Gamma Electric to install the foot switch.
Dennis Swenton of Gamma Electric deposed that he had to rewire some of the existing circuits to incorporate the foot switch. Swenton the work he performed did not effect the anti-repeat mechanism.
Glenn Brown of Newell Industrial recommended that a "light curtain used as a safety device to prevent the operator's hands from being caught in the point of operation. G S Metal decided to use the "Possons pullback device" from the old Bliss press they were replacing and instructed Newell to fit the device to the Komatsu press. The pullback device uses the motion of the press ram to transfer the pullback action to the operator's hands. As the ram descends downward into the die, the pullback cords, which are attached to the operator's wrists, are pulled backwards moving the operator's hands from the pinch point.
On the date of the injury, October 13, 1989, appellant was "checked in" to her press by a die setter, who adjusted the pullback device to appellant's physical dimensions. According to appellant, the press "repeated" once that morning, meaning it cycled when the foot pedal was not pressed. The product, baking pans, were getting smashed. Moore alerted the die setter, who fixed the problem.
A few hours later, the ram in the press cycled downward while Moore's hand was in the pinch point of the press. The Possons pullback device did not pull appellant's hands out because the "multiplier" cable broke. The multiplier cable connects the pullback cords to the cam/lever which is connected to the ram. Appellant did not know if the press repeated when the injury happened.
The manufacturer of the pullback device, Positive Safety Manufacturing Co., recommended that the multiplier cable should be checked weekly, and worn cables replaced. The die setters at G S Metal used to perform such weekly checks, but this practice was discontinued in February of 1989. The cables were checked at the end of June and July, 1989.
Several G S employees testified as to other accidents at G S Metal. Jo Franklin deposed that about a year before appellant's accident, she was injured on the same press as appellant. She did not remember hitting the foot pedal, but was unsure if the press "repeated." The pullback device failed to pull Franklin s hands out of the pinch point, for unknown reasons. In the early eighties, Franklin witnessed the multiplier cable breaking on a press different from the press involved in appellant's case. The press operator, "Carrie," had her fingers amputated. Pamela Young deposed that a grievance was filed over an employee who refused to work on a press because of a worn cable. Young was unsure if the incident occurred before or after appellant's injury. Appellant testified concerning several accidents she had heard about, which happened before she started working there.
John Loeser of Positive Safety Manufacturing inspected the press four days after the accident. The press was back in operation. Loeser found the pullback device was grossly misadjusted. He stated that misadjustment could have contributed to the injuries, but he did not observe the adjustment the day of the accident. The cotter keys were missing and the device was designed for a Bliss press, but these items did not cause the accident. Loeser was unable to tell if the cable was worn, because it had unraveled. He also stated that the cable would have stayed in place had the cable clamp been properly tightened.
Plaintiff's expert, Richard VerHalen, stated in an affidavit that the press was defective when it left the factory because it lacked adequate point of operation guarding accommodations and lacked light curtains or presence sensing devices at the point of operation. Furthermore, the press had a defective anti-repeat system when it left the factory. The press was defective for failing to have a foot switch circuit, because it was foreseeable the purchaser would install one and affect the anti-repeat circuits. VerHalen stated that a discovery deposition of a Komatsu engineer was necessary to further comment on the defects in the anti-repeat system.
Appellant sought to depose a Komatsu engineer. Komatsu moved for a protective order because of the burden and expense of deposing a Japan-based engineer, and because the evidence would not help plaintiff in opposing Komatsu's motion for summary judgment. Appellant opposed the motion, stating the discovery was necessary to prove a defect in the press. The trial court granted Komatsu's motion, prohibiting the deposition until Komatsu's motion for summary judgment was ruled upon.
 I.
Appellant's first assignment of error states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF KOMATSU WHEN IT WOULD NOT ALLOW PLAINTIFF TO CONDUCT PROPER DISCOVERY AGAINST SAID DEFENDANT.
Appellant argues that summary judgment was not proper because she did not have the opportunity to obtain necessary evidence, due to the trial court's granting of Komatsu's motion for a protective order. Summary judgment may be reversed if the non-moving party did not have a sufficient opportunity for discovery. Tucker v. Webb Corporation (1983),4 Ohio St.3d 121. Komatsu asserts that appellant is barred from raising this error on appeal because appellant failed to file a Civ.R. 56(F) motion. See Stegawski v. Cleveland Anesthesia Group Inc. (1987),37 Ohio App.3d 78. It would be futile to require the appellant to make a motion to allow discovery under Civ.R. 56(F) when the court already ordered that the deposition could not take place under Civ.R. 26(C). Also, appellant's brief in opposition to the protective order and the expert affidavit of Richard VerHalen essentially meet the requirements of a Civ.R. 56(F) motion. See Stegawski, supra, at 87, Tucker, supra.
The trial court has broad discretion to regulate discovery, however SeeStegawski, supra, Manofsky v. Goodyear Tire Rubber Co. 1990,69 Ohio App.3d 663, 668.
 In exercising its discretion in a discovery matter, the court balances the relevancy of the discovery request, the requesting party's need for the discovery, and a the hardship upon the party from whom the discovery was requested.
Stegawski supra at 85.
Discovery concerning the defective anti-repeat function was irrelevant because appellant was unable to prove that the defective anti-repeat function proximately caused her injury. See Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 321, Seimon v. BectonDickinson Co. (1993), 91 Ohio App.3d 323. There was insufficient evidence the press repeated when appellant was injured. Reasonable minds could not infer that the press repeated at the time of the injury, based solely on the evidence that the press repeated once that morning and on another occasion one year ago. Cf. Pariseau v.Wedge Products, Inc. (1988), 36 Ohio St.3d 124, 126. Expert Richard Ver Halen opined that the anti-repeat system caused the injury, but stated no factual basis for this opinion. See Evid. R.705, State v. Chapin
(1981), 67 Ohio St.2d 437.
Thus, the information appellant sought to discover was irrelevant and the requested deposition was unnecessary. The trial court did not abuse its discretion in prohibiting the deposition, which would result in unnecessary and burdensome expense to Komatsu. See Stegawski, supra at 86.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF KOMATSU, LTD. AND KOMATSU AMERICA CORP. BECAUSE PLAINTIFF PRESENTED PRIMA FACIE EVIDENCE THAT THE PRODUCT WAS DEFECTIVE WHEN IT LEFT THE KOMATSU, LTD, FACTORY.
If, product was materially altered after it left the manufacturer's control, and the material alteration significantly contributed to the plaintiff's injury, the manufacturer cannot be held strictly liable for product defects. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,Kobza v. General Motors Corp. (1989), 63 Ohio App.3d 742. The manufacturer may still be liable, however, of (1) the product was defective when it left the manufacturer; (2) these defects proximately caused the injury; and (3) the subsequent alterations were foreseeable by the manufacturer. Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28,Torres v. Conrad Enterprises, Inc. (June 1, 1984), Ottawa App. No. OT-84-2, unreported.
 Since the alterations were foreseeable, we cannot say, as a matter of law, that they act as a superseding cause relieving appellant of all liability. . . .
Cox, supra at 33.
Here, G S Metal materially altered the press by adding the foot switch. This alteration was foreseeable to Komatsu. We must now determine if there was any evidence of defects in the press when it left Komatsu, which proximately caused the injuries.
Appellant contends the power press had a defective anti-repeat system when it left Komatsu's control. The press was also allegedly defective as manufactured because it lacked a foot switch circuit, and the purchaser's foreseeable modification of adding a circuit damage the anti-repeat system. As discussed above, there was insufficient evidence that the anti-repeat system was the direct and proximate cause of appellant's injury. Therefore, Komatsu. Can not be held liable on the basis of these alleged defects.
Appellant asserts the press lacked inadequate point of operation guards and light curtains or presence sensing devices when it left Komatsu's control. When the press left Komatsu, the only means of activation was dual palm buttons. No additional point of operation guards were needed because it was impossible for an operator to place either hand below the ram, having both hands on the activation buttons. Thus, the press was not defective for lack of guards when it left Komatsu. Although point of operation guards were needed for the continuous mode, appellant was not using the continuous mode.
Appellant argues that the installation of the foot switch was foreseeable by Komatsu, so the press was defective in design for failing to include point of operation guards. A product is not considered defectively manufactured because it does not have safety devices to anticipate every possible modification. Casper v. VictorFluid Power, Inc. (May 10, 1991), Hancock App. No. 5-90-19, unreported Keffer v. International Harvester Co. (June 9, 1983), Franklin App. No. 82AP-976. The product must be unreasonably dangerous when manufactured and prior to any substantial modifications. Temple, supra, Love v.Mack Trucks, Inc. (1985), 27 Ohio App.3d 198.
Appellant has not set forth any evidence that a defect in the press in existence when the press left Komatsu was the proximate cause of her injuries. Summary judgment in favor of Komatsu was proper.
Accordingly, this assignment of error is overruled.
 III.
Appellant a third assignment of error states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF G S METAL PRODUCTS, INC.
 . . . in order to establish "intent" for the purpose of proving the existence of an intentional tort omitted by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
(Citations omitted.) Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. The second requirement of knowledge to a substantial certainty that the employee will be injured was further described as follows,
 To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequence may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
(Citations omitted.) Id., paragraph two of the syllabus. If reasonable minds can only conclude that the employer did not know with any degree of certainty that the injury would occur, the employer is entitled to summary judgment. Pariseau v. Wedge Products, Inc.
(1988), 36 Ohio St.3d 124.
Appellant asserts that G S Metal knew of the following dangers; failure of G S Metal to inspect and replace cables on a weekly basis, improper maintenance of the pullback device, failure to adjust the pullback devices properly, using a pullback device designed for a Bliss press and a defective anti-repeat system. G S Metal knew that the cables should be inspected, and knew there was a risk of harm to the employees from failing to inspect G S Metal did not know with any degree of certainty that the cable on appellant's press would break. The fact that a cable broke or another press some years ago for unknown reasons does not prove that the employer knew to a substantial certainty the cable on appellant's press would break. While G S Metal may have been negligent or reckless, it did not have the requisite intent to establish an intentional tort.
There was no evidence that G S Metal had any knowledge the pullback device was improperly maintained or adjusted. Also, there was no evidence that using a pullback device designed for a Bliss press caused the injuries.
G S Metal knew of Jo Franklin's injury on the same press appellant was injured on, which supposedly occurred when the press repeated. There is no evidence any management personnel of G S knew that appellant's press repeated that morning. Cf. Kirby v. DependableStamping Co, (March 24, 1994), Cuyahoga App. No. 65009. Even if G S Metal knew that the press repeated twice, it still did not know with any degree of certainty that appellant would be injured, especially since the pullback device should have prevented injury.
Reasonable minds can only conclude that G S Metal did not know to any degree of certainty that appellant would be injured. Summary judgment for G S Metal was proper.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, J., CONCURS.
 MATIA, DAVID T., J., DISSENTS WITHOUT OPINION.
[1] The other defendants in this case, Positive Safety Manufacturing Company, Newell Industrial Corp. and Macwhyte Co., were dismissed and are not parties in this appeal.