OPINION
{¶ 1} Appellant, Michael A. Shore Co., L.P.A., appeals from the February 4, 2002 judgment entry of the Lake County Court of Common Pleas, Probate Division.
 {¶ 2} On March 2, 1995, appellee, Jacqueline Adams, applied for a non-limited guardianship of the person and estate of her mother, Bertina Hards ("Ms. Hards"). In an expert evaluation filed with the application, Dr. Bruce Lowrie diagnosed Ms. Hards as suffering from Alzheimer's disease and being "very demented." The Lake County Common Pleas Court, Probate Division ("the Lake County Probate Court") appointed appellee as guardian of Ms. Hards and her estate on April 10, 1995.
 {¶ 3} On February 18, 1997, appellee filed an "An Application for Authority to Expend Funds" in the amount of $5,000 for the purpose of retaining appellant's services with respect to a possible suit against Dean Witter Reynolds, Inc. ("Dean Witter"). Ms. Hards had maintained several accounts with Dean Witter throughout the mid-1980s and 1990s. Lawrence Trennel ("Trennel"), a certified public accountant, sent appellee a report on November 10, 1997, in which he estimated the losses arising from Dean Witter's mismanagement of Ms. Hards at $5,160,400.[1]
 {¶ 4} In a March 18, 1997 letter to appellee, appellant noted that it billed its clients at a rate of $125 per hour. The Lake County Probate Court authorized the expenditure of funds to pay appellant's retainer on March 19, 1997. Appellee filed suit against Dean Witter on June 4, 1997, in the Cuyahoga County Common Pleas Court.
 {¶ 5} Appellant sent appellee a letter on December 4, 1997, in which appellant requested a second retainer in the amount of $10,000. On January 6, 1998, appellee filed a request for the Lake County Probate Court to approve the expenditure of the estate's funds to pay appellant's new retainer. This application was denied on the same date.
 {¶ 6} Francis P. Manning ("Manning"), an attorney who practices in Lake County, testified that Trennel had contacted him at some point after the trial court denied appellee's request for payment of the retainer. Trennel informed Manning that appellee was seeking an attorney familiar with Lake County procedures who could assist her in obtaining the Lake County Probate Court's approval to pay appellant's $10,000 retainer. From his own investigation, Manning concluded that the Lake County Probate Court had denied the expenditure of funds because Ms. Hards had a separate inter vivos trust ("the trust"), for which National City Bank ("the bank") served as the trustee, that was not part of the estate and from which funds could be obtained to pursue the Dean Witter litigation. He observed that the value of the trust was greater than the value of the assets held by the estate. Manning ultimately convinced the bank to pay the retainer by indicating that if the suit against Dean Witter was successful, the damages recovered would eventually be placed in the trust.[2]
 {¶ 7} On March 27, 1998, the Cuyahoga County Common Pleas Court granted summary judgment in favor of Dean Witter on appellee's suit. Appellee appealed that decision, and in Adams v. Dean Witter Reynolds,Inc. (June 17, 1999), 8th Dist. No. 74379, 1999 WL 401394, the Eighth Appellate District affirmed the trial court's judgment. The appellate court noted that the latest date on which appellee and Ms. Hards could have become aware of the facts of their underlying cause of action was June 1, 1992; therefore, pursuant to the statute of limitations set forth in R.C. 1707.43, appellee had until June 1, 1994, to file her lawsuit; however, appellee did not file her lawsuit until June 4, 1997, three years after the statute of limitations had run. The appellate court also indicated that appellee's suit would not have been timely filed even if a four-year statute of limitations had been applicable.
 {¶ 8} On October 15, 1999, after the Eighth Appellate District had denied appellee's appeal in the Dean Witter litigation, appellant filed a complaint against appellee in Shaker Heights Municipal Court. The case was subsequently removed to the Cuyahoga County Common Pleas Court. In its complaint, appellant sought recovery of $12,861.90 from appellee on four separate theories: account; breach of contract; quantum meruit, and unjust enrichment.
 {¶ 9} In an attempt to resolve the dispute, on March 10, 2000, appellee filed a motion with the Lake County Probate Court for authority to expend funds to pay the $12,681.90 sought by appellant. In its April 14, 2000 judgment entry, the Lake County Probate Court noted, with respect to the litigation in the Cuyahoga County Common Pleas Court, that it would be inappropriate for another court to approve the payment of appellant from the estate of Ms. Hards, because appellee could expend the funds of the estate only with the approval of the Lake County Probate Court. The Lake County Probate Court deferred ruling on appellee's motion in order to give the parties the opportunity to discuss a possible settlement.
 {¶ 10} On December 8, 2000, Daniel S. White, an attorney in the offices of appellant, sent a letter to Judge Skok of the Lake County Probate Court informing him that Judge Gallagher of the Cuyahoga County Common Pleas Court had asked appellant to contact him regarding appellant's fee request. Judge Gallagher had indicated that the Cuyahoga County Common Pleas Court litigation could be resolved if fees totaling $16,440.33 were paid to appellant.[3]
 {¶ 11} The Lake County Probate Court concluded in a December 28, 2000 judgment entry that appellant had not received notice of a hearing held on April 14, 2000, with respect to appellee's March 10, 2000 "Motion for Authority to Expend Funds." Therefore, the Lake County Probate Court decided to reconsider its April 14, 2000 judgment entry. In a March 2, 2001 judgment entry, the Lake County Probate Court found the fees in the amount of $12,861.90 requested by appellant to be reasonable and granted appellee's motion to expend the funds. On March 8, 2001, appellee filed a "Motion for a New Trial" with respect to the Lake County Probate Court's March 2, 2001 judgment entry, although no trial had been held on the matter.[4] Regardless of the merits of this motion, it demonstrated that appellee was now contesting the expenditure of funds for the payment of appellant, although previously, when Manning was serving as her attorney, she had moved the Lake County Probate Court for authorization of such expenditure.
 {¶ 12} The Lake County Probate Court sua sponte appointed Richard Spotz as special master commissioner ("the special master") to resolve this convoluted controversy. The special master filed his report on December 5, 2001. He made the following observations with respect to appellant's fee request: "[Appellant's] fees for its representation of the Guardianship in the Dean Witter matter totaled more than $22,500.00 A $22,500.00 bill for a suit filed upon an expert report that counsel has represented as containing many simple math mistakes and that was ultimately dismissed due to the running of the statute of limitations. This Court finds it difficult to see how this served as a benefit to [Ms. Hards] or her estate. Furthermore, [appellant] did receive a total of more than $15,000.00 from the Guardianship and [Ms. Hard's] trust at National City Bank for its services. *** I believe that this is more than enough compensation for [appellant] in this matter."
 {¶ 13} Appellant filed objections to the special master's report on December 13, 2001. The Lake County Probate Court adopted the special master's report in its February 4, 2002 judgment entry and overruled all of the pending objections. Appellant has filed a timely notice of appeal of the February 4, 2002 judgment entry and makes the following assignment of error:
 {¶ 14} "The [Lake County Probate Court's] decision to adopt [the special master's] report denying appellant's previously approved request for attorney fees and expenses and denying appellant's discovery requests constitutes reversible error."
 {¶ 15} The denial or allowance of attorney fees is within the probate court's discretion; nevertheless, its determination is subject to review under an abuse-of-discretion standard. In re Rider (1990),68 Ohio App.3d 709, 712. For an attorney to be entitled to recovery of fees from a guardianship, he must demonstrate that "the legal expenses incurred were directly beneficial to the ward and *** were reasonable under the Code of Professional Responsibility, DR 2-106." Id.
 {¶ 16} In the instant matter, the special master stated in his report that appellant's services did not confer a benefit upon the estate of Ms. Hards. Appellant has utterly failed to dispute this conclusion in its appellate brief. We would note that appellant has already received in excess of $15,000 for filing a complaint against Dean Witter more than three years after the statute of limitations had run on the underlying action. Appellant now seeks an additional $12,861.90 in addition to the funds it has already received. Therefore, we conclude that the Lake County Probate Court did not act in an unreasonable, arbitrary, or unconscionable manner in denying appellant's fee request.[5]
 {¶ 17} Appellant also contends that the Lake County Probate Court improperly denied his request for further discovery in this matter. While Ohio favors a policy of liberal discovery, the trial court has discretion in controlling the process. Stegawski v. Cleveland Anesthesia Group,Inc. (1987), 37 Ohio App.3d 78, 85. In exercising this discretion, the trial court must balance the relevancy of the requested discovery, the need for that discovery, and the hardship such discovery would impose upon the party from whom it is requested. Id. We will reverse the trial court's decision if its "decision is improvident and affects the discovering party's substantial rights." Id. at 86.
 {¶ 18} Here, appellant's fee request fails because appellant has not demonstrated the benefit its legal services conferred upon the guardianship. The knowledge of this benefit should be largely, if not entirely, within the province of appellant. Certainly, appellant has offered no factual predicate that would suggest that appellee had sole possession of evidence demonstrating the benefit that appellant's services had conferred upon the guardianship. In short, appellant has not shown that its substantial rights were affected by the special master's decision to deny its discovery requests.
 {¶ 19} For the foregoing reasons, appellant's sole assignment of error is not well-taken, and the decision of the Lake County Court of Common Pleas, Probate Division, is affirmed.
 {¶ 20} Having addressed the merits of appellant's argument, we would note that both parties to this appeal submitted briefs to this court that lack basic civility, a coherent statement of the facts and procedural posture, elementary legal citation, and any semblance of linear narrative. We would remind the attorneys that cases are not won or lost through the use of unsubstantiated vituperation. We would also suggest that the attorneys carefully consider how their comments and allegations fit within the framework of the canon of legal ethics before they find themselves subject to significantly unpleasant sanctions.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] Trennel's narrative explaining the nature of Dean Witter's alleged improprieties is not contained in the record submitted to this court.
[2] An April 14, 2000 judgment entry of the Lake County Probate Court indicates that the trust paid appellant $10,573.69.
[3] We are unable to determine from the record before us how Judge Gallagher ultimately disposed of this matter.
[4] We would note that this was simply the first in a barrage of motions filed in this matter by James T. Flaherty ("Flaherty"), who was acting as appellee's attorney at that point. Flaherty would ultimately submit a fee request in the amount of $11,850.00. All of these fees were incurred in the course of Flaherty representing appellee in her efforts to oppose the payment of appellant's fee request. His fee request was ultimately denied by the probate court.
[5] In its appellate brief, appellant raises the issue of a contingent fee agreement that it allegedly entered into with the guardianship for purposes of pursuing the Dean Witter litigation. This agreement played no role in the special master's decision because he found that appellee had not submitted an application for approval to enter into a contingent fee agreement; therefore, such an agreement would not have been binding on the guardianship. A copy of the agreement that has been executed by both parties is contained within the record. Our decision in this matter is premised on the assumption that the agreement was not valid. If the agreement had been valid, it would simply provide further evidence in support of our conclusion that appellant is not entitled to recovery of an additional $12,861.90 from the guardianship.