OPINION
{¶ 1} Appellant Christopher Continenza appeals the decision of the Mahoning County Court of Common Pleas to grant Appellees' motion for summary judgment in a disability discrimination case. Appellant alleged that his termination by George Tablack, Mahoning County Auditor, was based to some extent on his disabilities. For the following reasons, the trial court's judgment is affirmed.
 {¶ 2} Appellant filed a Complaint on November 3, 2000, alleging that he was discharged from his employment as an application support specialist by Appellee George Tablack, Mahoning County Auditor, because of his disabilities. The Mahoning County Commissioners were also named as defendants in their official capacities.
 {¶ 3} Appellant suffered from inclusion body myocitis ("IBM") and diabetes. IBM is a degenerative progressive neuromuscular disease that caused weakness in Appellant's legs and made walking difficult.
 {¶ 4} Appellant was hired by Appellees after he advised them that he had problems with his legs, but Appellant had not yet been diagnosed with IBM. Appellees conceded that Appellant's IBM may constitute a disability, but argued that his diabetes was not a disability. Appellant's allegations of disability discrimination rely on both the IBM and the diabetes as constituting disabilities.
 {¶ 5} Appellees asserted that Appellant's diabetes was not a disability because he testified in deposition that his diabetes was, "not a problem." (Continenza Depo. p. 26.) Appellant testified:
 {¶ 6} "Q: Okay. So other than the need to take injections and some medication and the need to eat on a regular basis and to get exercise, you have not found that the diabetes itself interferes with your daily activities; is that a fair statement?
 {¶ 7} "A: Provided I can take the injections and stuff, correct." (Continenza Depo., p. 27.)
 {¶ 8} After discovery, Appellees collectively filed a motion for summary judgment on April 1, 2002. On December 5, 2002, the court granted the Appellees' motion for summary judgment as to all of Appellant's causes of action. The trial court's judgment entry did not state any basis for its decision. This appeal followed.
 {¶ 9} In order to grant a motion for summary judgment, a court must find that, construing the evidence most strongly in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Williams v. First UnitedChurch of Christ (1974), 37 Ohio St.2d 150, 151, 309 N.E.2d 924.
 {¶ 10} In Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio held that the party moving for summary judgment on the ground that the nonmoving party cannot prove its case has the initial burden to inform the court of the basis for the motion. Thereafter, the moving party must identify the portions of the record that demonstrate the lack of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Id.
 {¶ 11} Once the moving party satisfies this initial burden, the nonmoving party has a reciprocal burden to set forth specific facts to demonstrate there is a genuine issue for trial. Id. The issue presented by a motion for summary judgment is not the weight of the evidence but whether there is sufficient evidence of the character and quality set forth in Civ.R. 56 to show the existence or the lack of genuine issues of fact. Id.
 {¶ 12} It should be noted that at the trial court both Appellant and Appellees relied on several uncertified deposition excerpts attached to their motion for summary judgment and brief in opposition, and Appellant relied on several other uncertified documents. The docket sheet does not reflect that the full depositions were filed with the trial court, and they were not filed with this Court.
 {¶ 13} Appellant, in his Memorandum in Opposition to Appellees' Motion for Summary Judgment, relied upon excerpts of the depositions of Appellant, Christian Kindarji, James Stratton, and George Tablack. Appellant also relied on several documents; including a copy of the job advertisement, a copy of Appellant's resume, excerpts of the Mahoning County employee personnel policy, and a copy of a letter from the Mahoning County Prosecuting Attorney's Office directed to the Ohio Department of Job and Family Services, Bureau of Unemployment Compensation Benefits. Appellant also relied on the affidavit of Thomas Melone, a Mahoning County Deputy.
 {¶ 14} An appellate court may consider improper summary judgment evidence if neither party objects. See Bowmer v. Dettelbach (1996),109 Ohio App.3d 680, 684, 672 N.E.2d 1081; Hersch v. E.W. Scripps Co.
(1981), 3 Ohio App.3d 367, 373, 445 N.E.2d 670. Neither party has specifically objected to the other's reliance on a particular exhibit or deposition excerpt, and we will therefore review and treat as properly submitted all of the materials that were reviewed by the trial court.
 {¶ 15} Appellant's sole assignment of error states:
 {¶ 16} "The Trial court committed reversible error in granting appellees' motion for summary judgment because there are genuine issues of material fact that remain for determination by a jury"
 {¶ 17} Appellant contends that he established a prima facie case of disability discrimination. Appellant maintains that his prima facie case supporting disability discrimination should preclude Appellees from being granted summary judgment.
 {¶ 18} R.C. 4112.02(A) prohibits handicap or disability discrimination. The Ohio Supreme Court in Hood v. Diamond Products, Inc.
(1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus, set forth the requirements for a prima facie case of handicap discrimination:
 {¶ 19} "In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." Id., citingHazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279,496 N.E.2d 478.
 {¶ 20} It should be noted that the Court in Hood, supra, was interpreting the prior version of R.C. 4112.01(A)(13), which defined "handicap". The applicable version in the instant case has an effective date of March 17, 2000, and alters the definition and changes the term "handicap" to that of "disability." However, R.C. 4112.02(A) as it applies to the instant case has essentially the same language defining unlawful discriminatory practices as they were defined in the version at issue in Hood, supra.
 {¶ 21} It is undisputed that Appellant's IBM is a disability. However, whether Appellant's diabetes constitutes a disability is disputed. We will assume throughout the remainder of this opinion that Appellant has disabling conditions as defined by R.C. 4112.01(A)(13) and4112.02(A). Thus, we assume arguendo for purposes of summary judgment review that Appellant has satisfied the first element of the three-part test in Hood.
 {¶ 22} The second prong of Hood, supra, is whether an adverse employment action was taken, in part, because Appellant was disabled. It is undisputed that Appellant's termination is an adverse employment action.
 {¶ 23} The essence of Appellant's argument that his termination was based at least in part on his disability relies on his two claimed disabilities. Appellant argues that as a result of his IBM and diabetes, he was denied the right to access the work place. Appellant argues that he was denied the opportunity to improve his work skills since he did not have access to the handicap entrance to the courthouse after the deputies left at 6:00 p.m.
 {¶ 24} Appellant asserted that because he had diabetes he needed to go home to eat and to take his insulin daily at approximately 5:00 or 6:00 p.m. It is undisputed that Appellant began work at 8:00 a.m. and left work daily between 4:00 or 4:30 p.m.
 {¶ 25} It is undisputed that the handicapped entrance to the courthouse was available for his use from approximately 7:00 a.m. to 6:00 p.m. Appellant's claim of lack of access to the job only concerned the period of time after 6:00 p.m., after he went home to eat his meal and to take the requisite insulin. This additional after-hours access was never requested until approximately two weeks before Appellant was discharged, and only after he was advised that he needed to expend more effort at the job site.
 {¶ 26} It is also undisputed that Appellant frequently used the west entrance to the courthouse when going to lunch with co-workers. Access to this entrance required the use of a pass that Appellant was given after his request for handicapped access. That entrance led to several steps immediately upon entering the doors. Appellant testified that he was fully capable of using this entrance when someone else was holding the door.
 {¶ 27} In his brief to the trial court Appellant asserted that it would not have been sufficient to have just one other individual opening this door for him after hours because it was too dangerous. He provided no evidence or testimony to support this assertion. There is evidence that Christian Kindarji, a contracted consultant, offered to open the west entrance whenever Appellant needed access after 6:00 p.m. Monday through Thursday. (Kindarji Depo. p. 26; Continenza Depo. p. 51.) Kindarji usually worked until 10:00 p.m.
 {¶ 28} Appellant began his employment for Appellees in June 2000, and his employment was terminated by the end of his third month of employment; August 2000. Appellant was still a probationary employee at the time his employment was terminated. From the beginning of his employment, Appellant was provided software and online manuals for at-home use.
 {¶ 29} Tablack testified that Appellant's employment was terminated due to his inability to support the PeopleSoft program as needed by the Auditor's office. The decision to terminate his employment was made by George Tablack. According to Appellees, the decision was based solely on Appellant's inability to perform. George Tablack relied on the opinion of Christian Kindarji, a contracted consultant, retained for computer programming and installation. Kindarji worked closely with Appellant and was in charge of overseeing Appellant's training.
 {¶ 30} According to Appellees, Appellant failed to meet Kindarji's 90-day goals established for Appellant; he was slow to learn everything related to the PeopleSoft program and his representations of his programming skills at his interviews were inaccurate. (Kindarji Depo., pp. 46-49.)
 {¶ 31} Appellant's argument in support of his charge of discrimination is based, in part, on the proximity of his termination to a request for syringe disposal and a request for after-hours access to the job. Appellant asserted that he made these requests directly to Kindarji. Again, Appellant presented no evidence linking these requests to his subsequent termination. He simply asserts that the timing of these would allow a jury to infer that the discharge was the result of the requests.
{¶ 32} Appellant presented absolutely no evidence that he was completely denied access to his workplace. The only time after-hours handicap access was allegedly requested and not provided was the two weeks prior to Appellant's discharge. Appellees established that Appellant could have made arrangements with Kindarji for after-hours assistance. Appellant failed to rebut the fact that he was able to use the west entrance with limited assistance, and he merely urged, without evidence, that it would have been dangerous.
{¶ 33} Appellant did not dispute that he could have done additional work in the mornings or at home in the evenings. Appellant failed to establish with any evidence that his employment was terminated, in any part, because he was disabled.
{¶ 34} The third and final prong to establish a prima facie case of disability discrimination requires Appellant to demonstrate that he can safely and substantially perform the essential functions of the job.Hood, supra. Assuming Appellant proved his termination was in part related to his IBM, he must still prove that he could substantially perform the job in question.
{¶ 35} Appellees asserted that Appellant was terminated based on his immediate supervisor's opinion and assessment. Kindarji was in charge of Appellant's training and oversaw his daily work. Appellees indicated that Appellant lacked the requisite base knowledge to effectively learn the new program. Kindarji testified that Appellant would have been unable to assume the job responsibilities even after another full year of training.
{¶ 36} Appellant provided no evidence establishing that he could substantially perform the essential functions of his employment. He did not provide any testimony from past or subsequent employers or colleagues. Appellant did not provide evidence that he believed he was able to perform the job functions. His argument and testimony is that he met the job advertisement qualifications and that he believed his training was inadequate.
{¶ 37} There is testimony to the effect that Appellant was initially to be trained by both Robert Gleichert and Christian Kindarji, and that Gleichert was unavailable since suffering a heart attack. However, Appellant presented no evidence with regard to how his training would have been different or better had Gleichert been available. In fact, the record reveals that Kindarji trained Gleichert, as well.
{¶ 38} Although it is clear that Appellant has not established a prima facie case of employment discrimination, there are other reasons in the record for granting summary judgment to the employer in this case. Even if an employee establishes a prima facie case of disability discrimination, and if the employer presents a legitimate business reason supporting its decision, then the employee must then demonstrate that the employer's reason was a pretext for impermissible discrimination. Hood,
supra, 74 Ohio St.3d at 302, 658 N.E.2d 738, citing Plumbers Steamfitters Joint Apprenticeship Commt. (1981), 66 Ohio St.2d 192, 198,421 N.E.2d 128, 132. The Court in Plumbers, supra, stated that:
{¶ 39} "Pretext may be proved either by direct evidence that racial animus motivated the discharge or by discrediting the employer's rebuttal evidence. * * * The complainant is required to prove pretext by a preponderance of the evidence." Id.
{¶ 40} Even if we assume for the sake of argument that Appellant established a prima facie case of disability discrimination, he still must demonstrate that Appellees' reason for terminating his employment was a pretext for impermissible discrimination. Appellant asserted four bases for his conclusion that Appellees' stated legitimate business reasons were pretexts for disability discrimination.
{¶ 41} First, Appellant argued that his training was insufficient since one of the individuals who was supposed to train him was no longer available after suffering a heart attack. Appellant did not establish whether or how his training would have been better had the other individual trained him, or how his training impacted in any way upon his disabilities.
{¶ 42} Second, Appellant asserted that his personnel file did not contain sufficient performance reviews. However, Appellant had one performance review prior to his discharge. The record shows Appellant was entitled to only one review within the period, and therefore, the assertion is incorrect.
{¶ 43} Third, there is an assertion that Appellees appealed an adverse ruling by the Bureau of Employment Services that was initially in Appellant's favor. Once again, Appellant does not explain how this fact tends to show that the reasons he was fired were a pretext for discrimination.
{¶ 44} Fourth and finally, Appellant argued that Appellees' reasons were pretextual because they did not want any consultants working for them long term, and they were concerned that Appellant would not be ready to work independently for at least another year. Even if this allegation, if true, could show that Appellees fired certain employees for pretextual reasons, the pretext Appellant alleges has nothing to do with discrimination against Appellant's alleged disabilities.
 {¶ 45} Appellant has failed to present evidence to establish all of the elements of a prima facie case of disability discrimination pursuant to Hood, supra. He has not raised a material question of fact tending to show that his termination was based, in any part, on his alleged disability. Additionally, Appellant failed to establish that he can safely and substantially perform the essential functions of the job. Hence, Appellant failed to create a factual dispute that Appellees' legitimate business reasons for his discharge were pretexts for impermissible discrimination. Innuendo and supposition, completely unsupported, are not enough. Since Appellant failed to show the existence of a genuine issue of material fact pursuant to Civ.R. 56, we hereby overrule Appellant's sole assignment of error. The trial court's order granting Appellees summary judgment is affirmed in full.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.