OPINION *Page 2 
{¶ 1} Plaintiff-appellant Robert Spagnola appeals the decision of Mahoning County Common Pleas Court, Probate Division, granting summary judgment for defendant-appellee John Spagnola. Two issues are raised in this appeal. The first issue is whether the trial court abused its discretion when it denied appellant's Civ. R. 56(F) motion for a continuance that was filed after the scheduled date for the non-oral hearing. The second issue is whether the trial court erred in granting summary judgment for appellant. For the reasons expressed below, the judgment of the trial court is affirmed.
 STATEMENT OF CASE {¶ 2} Joseph Spagnola, a resident of Mahoning County and decedent, executed a trust, along with other documents, in 1994. Decedent named himself as the trustee. Appellant was named as the co-trustee to serve in the event of Joseph's death or in the event Joseph resigned as trustee. Appellant was the brother of decedent and lived with him for close to thirty years. In 1997, appellant married and moved to Florida.
 {¶ 3} In 2000, decedent amended his trust. Appellant was renamed as the "alternate trustee." A contingency was also made that in the event appellant was unable to serve as trustee, appellee, another brother of decedent, would be trustee.
 {¶ 4} On April 5, 2005, decedent once again amended his trust. Appellee was named as the successor trustee and beneficiary of the trust. The trust no longer designated appellant as an alternative trustee or beneficiary.
 {¶ 5} No subsequent amendments were made to the trust. On May 10, 2006, decedent died. Following his death, appellee informed appellant that he was no longer the alternate trustee and showed him the April 5, 2005 amended trust.
 {¶ 6} On June 30, 2006, appellant filed a complaint in Mahoning County Common Pleas Court, Probate Division, to set aside and invalidate the trust. Appellant contended that the April 5, 2005 amended trust was invalid because decedent was not of sound mind when the document was signed. He also asserted that at the time of the execution of the amendment, decedent was unduly influenced.
 {¶ 7} A pretrial was held before a magistrate on March 19, 2007. The magistrate, in a decision which was adopted by the probate court, set the trial date for *Page 3 
July 16, 2007, and ordered that any dispositive motions were to be filed by June 15, 2007.
 {¶ 8} Multiple depositions were taken including appellant's, appellee's and Nils Johnson, Jr., the attorney who executed the original trust and all amendments to the trust. During appellant's deposition he stated that he believed decedent was of unsound mind when he executed the April 5, 2005 amendment because decedent was suffering from dementia. His opinion was based on decedent's inability to recognize a friend of appellant's that decedent had not seen in approximately five years. It was also based upon the fact that a month before the amendment was made, decedent accused appellant of stealing one of his guns. Appellant testified that this was a ludicrous charge. However, Johnson testified that decedent was competent when executing the amendment in question.
 {¶ 9} Following the depositions, appellee filed a motion for summary judgment on June 14, 2007. Appellee asserted that there was no evidence that supported the position that decedent was suffering from dementia on the day he executed the amendment. He pointed to appellant's concession that setting aside hearsay and his own assumptions there were no other facts to indicate that decedent was not of sound mind when he executed the April 5, 2005 trust amendment.
 {¶ 10} On July 9, 2007, the probate court set the non-oral hearing on the motion for summary judgment for July 30, 2007. Prior to that non-oral hearing, on July 27, 2007, appellant filed a motion in opposition to appellee's summary judgment motion. Attached to this motion was a medical report from Dr. Nalluri in which he opined that decedent was suffering from "Vascular Dementia and was delusional in his thinking" when he amended the trust in April 2005. This report was not supported by an affidavit.
 {¶ 11} Thus, on the day of the non-oral hearing, July 20, 2007, appellee moved to strike the motion in opposition. This motion to strike was based on the fact that Dr. Nalluri's report was not proper evidence for summary judgment pursuant to Civ. R. 56(C).
 {¶ 12} On August 6, 2007 following the non-oral hearing date, appellant filed a motion for continuance to obtain an affidavit from Dr. Nalluri. On August 14, 2007, appellant filed the affidavit of Dr. Nalluri. *Page 4 
 {¶ 13} On September 5, 2007, the probate court granted summary judgment for appellee. In making this holding, it did not consider the report from Dr. Nalluri. It stated the following to support that decision:
 {¶ 14} "However, any reference to Dr. Anil Nalluri, who never met the Decedent, or his medical opinion (Exhibit "D") shall be stricken. His opinion was not supported by Affidavit, nor was he deposed. To consider his opinions in this instant Memorandum in Opposition to Defendant'sMotion for Summary Judgment is contrary to 56(C).
 {¶ 15} "* * *
 {¶ 16} "Plaintiff's Motion for Continuance of the Summary Judgment hearing, a request for an extension of time to file opposition to Defendant's Motion for Summary Judgment, and a Motion forContinuance to obtain Summary Judgment affidavits filed on August 6, 2007, seven (7) days after the scheduled hearing on the Motion forSummary Judgment are denied." 09/05/07 J.E.
 {¶ 17} The probate court then went on to find that there was no genuine issue of material fact and that appellee was entitled to judgment as a matter of law. It specifically stated that "[n]owhere in the pleadings or deposition submitted to the Court appears any evidence as to the factors required to prove lack of testamentary capacity." 09/05/07 J.E.
 {¶ 18} Appellant timely appeals from that ruling.
 FIRST ASSIGNMENT OF ERROR {¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED BY DENYING PLAINTIFF-APPELLANT'S CIV.R. 56(F) MOTION TO FILE OPPOSING SUMMARY JUDGMENT AFFIDAVITS TO ADMIT EVIDENCE OBJECTED TO BY DEFENDANTS-APPELLEES, RESULTING IN THE PROBATE COURT STRIKING AN EXPERT MEDICAL OPINION AND CONSIDERING ONLY THE PLEADINGS AND DEPOSITIONS BUT NOT OPPOSING SUMMARY JUDGMENT AFFIDAVITS AS CIV.R. 56(C) SUMMARY JUDGMENT EVIDENCE."
 {¶ 20} Appellant divides this assignment of error into five issues. The essence of all of his arguments is that the trial court abused its discretion when it denied his motion for continuance under Civ. R. 56(F).
 {¶ 21} Civ. R. 56 is the rule governing summary judgment. Division F specifies that if a party by affidavit indicates that more time is needed to obtain affidavits to support the party's position, the court "may order a continuance to permit affidavits to *Page 5 
be obtained or discovery to be had or may make such other order as is just." The decision of whether to grant or deny a Civ. R. 56(F) continuance is within the sound discretion of the trial court.Beegle v. Amin, 156 Ohio App.3d 533, 2004-Ohio-1579, ¶ 7. Thus, we may not reverse the decision absent an abuse of discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A party seeking a Civ. R. 56(F) continuance has the burden of establishing a factual basis and reasons why the party cannot present sufficient facts to justify its opposition without a continuance. Glimcher v.Reinhorn (1991), 68 Ohio App.3d 131, 138.
 {¶ 22} The first three issues appellant raises in his brief assert that the Civ. R. 56(F) motion was timely. Appellant admits that the motion was filed after the July 30, 2007 non-oral hearing. Yet, he contends that a Civ. R. 56(F) motion does not need to be filed prior to the summary judgment hearing; it is still timely if it is filed after the summary judgment hearing. He cites to case law and states:
 {¶ 23} "A Civ. R. 56(F) motion for leave to obtain opposing summary judgment evidence is not required to be filed prior to a summary judgment hearing. Steward v. Cleveland Clinic Foundation (Ohio App. 8 dist. 1999), 136 Ohio App.3d 244, 256 (citing Stegawski v. ClevelandAnethesia Group, Inc. (Ohio App. 8 Dist. 1987), 37 Ohio App.3d 78, 523
N.E.2d 902, paragraph four of the syllabus. (A Civ. R. 56(F) motion was timely filed up to the date the court ruled on a motion for summary judgment)."
 {¶ 24} Neither Steward nor Stegawski support the position that a Civ. R. 56(F) motion does not have to be filed prior to the summary judgment hearing. In Steward, the Eighth District did cite to the fourth paragraph of the syllabus of Stegawski which states:
 {¶ 25} "Civ. R. 56(F) authorizes a trial court to delay decision on a summary judgment motion while the non-moving party gathers necessary rebuttal data. However, an appellant who failed to seek relief under Civ. R. 56(F) in the trial court has not preserved his rights thereto for purposes of appeal."
 {¶ 26} This syllabus states nothing about the time frame in which a Civ. R. 56(F) motion must be filed. Furthermore, in Steward, the court indicated the record did not contain a Civ. R. 56(F) motion.Steward, 136 Ohio App.3d at 256. Thus, the timeliness *Page 6 
of such a motion was not at issue. Likewise, a Civ. R. 56(F) motion was not filed in Stegawski. Stegawski, 37 Ohio App.3d at 87.
 {¶ 27} That said, appellant also cites this court to Aglinsky v.Cleveland Builders Supply Co. (1990), 68 Ohio App.3d 810, 819, abrogated on other grounds, Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455. In this case, the Eighth District did find that the trial court abused its discretion when it did not grant the Civ. R. 56(F) motion. The motion was filed two days following the granting of summary judgment. However, the Eighth District's reasoning for doing so was because the trial court had sent mixed signals to the parties. Id. It was the moving party's second motion for summary judgment, which had new evidence attached to it in the form of an expert's affidavit. On the date that the second summary judgment motion was filed, the trial court set and journalized a trial date. Approximately one week after the second summary judgment motion was filed, the non-moving party filed a motion to strike. The trial court did not rule on the motion to strike, but two weeks later granted the summary judgment motion. The Eighth District opined that the trial court should have either ruled upon plaintiffs' motion to strike or notified the non-moving party that it was reconsidering the granting of the second motion for summary judgment. In its opinion, the Eighth District determined that the non-moving party should have been granted more time by the trial court to respond and produce their own expert or investigate other options. Id.
 {¶ 28} In the above situation, the Eighth District found an abuse of discretion. Id. But as the facts referenced above indicate, our situation is different. Here, the summary judgment motion was filed on June 14, 2007. Approximately three weeks later, the trial court set the non-oral hearing for July 30, 2007. The probate court at no point sent mixed signals to the parties.
 {¶ 29} Appellee counters the above cases by directing this court toVanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525. In Vanest, appellant argued that the trial court erred by granting summary judgment for appellee without considering appellant's untimely filed opposition materials. From the facts given, it does not appear that appellant actually filed opposition materials, but rather requested an enlargement of time to respond to appellees motion for summary judgment. That request was filed two days following the grant of summary judgment (which given the facts of the case was a non-final order). On that same date, appellant also filed a Civ. R. 60(B) motion *Page 7 
seeking relief from the grant of summary judgment. In that motion, appellant argued that it was excusable neglect because their attorneys were preoccupied with another case and failed to read the trial court's notice of the non-oral hearing date. The appellate court construed that Civ. R. 60(B) motion as a motion for reconsideration. It then went on to determine whether the late filing of the opposition material was excusable neglect and whether the trial court abused its discretion when it determined it would not consider the materials. It further found that while it may have decided differently than the trial court when determining whether to consider the untimely opposition materials, the trial court's decision not to consider them did not amount to an abuse of discretion.
 {¶ 30} Vanest is distinguishable. Here, the continuance request made under Civ. R. 56(F) was filed after the non-oral hearing date but prior to a decision being rendered. In Vanest, the request, which was not made under Civ. R. 56(F), was made after summary judgment was granted. Furthermore, in the case at hand, appellant did not argue that there was excusable neglect for filing the continuance motion after the date of the scheduled non-oral hearing. Appellant in Vanest, however, did argue excusable neglect.
 {¶ 31} That said, Vanest is still helpful. In footnote three of the opinion, the court discusses the options a party opposing a summary judgment motion has when a continuance is needed. First, it indicates that Civ. R. 56(F) is one avenue. Second, it then states that Civ. R. 6(B)(1) is another option before the original time period for response has expired. The third option indicates that Civ. R. 6(B)(2) permits a party to request, after the time for response has expired, additional time to respond if the failure to respond was the result of excusable neglect. It then stated:
 {¶ 32} "In the case at bar, in the absence of compliance with Civ. R. 56(F), Civ. R. 6(B)(2) was appellant's only other avenue by which to seek an enlargement of time within which to respond. See McCormac, Ohio Civil Rules Practice (2 Ed. 1992) 135, Section 6.06 (`When a motion is made after the expiration of the period, an extension can be granted only when the failure to act was a result of excusable neglect.')." Id at 532.
 {¶ 33} We agree with the reasoning in that footnote. Accordingly, we hold that if the trial court has set a hearing on the summary judgment motion (whether oral or non-oral), the Civ. R. 56(F) motion for continuance must be made prior to the date of *Page 8 
the hearing. A party may also use Civ. R. 6(b)(1) to request a continuance prior to the date of the hearing. However, after that date, the only means that a party can request additional time to respond is by a Civ. R. 6(b)(2) motion that alleges the failure to act was the result of excusable neglect.
 {¶ 34} Appellant does cites this court to Local Probate Rule 78.1(A)(9) (prior version) for support that allows for him to file his Civ. R. 56(F) within 14 days of the motion to strike. We, however, do not find this argument very persuasive and still find the motion was untimely. Admittedly, this local rule does indicate that opposition memorandum must be filed within 14 days of the filing of the related motion, unless the probate court grants an extension. His motion for continuance was filed within 14 days of the motion to strike. Yet that fact does not necessarily render the continuance motion timely and make the probate court's ruling an abuse of discretion. A request for an extension of time under Civ. R. 56(F) should have been filed prior to the date of the non-oral hearing. Ameriquest Mortg. v. Wilson, 11th Dist. No. 2006-A-0032, 2007-Ohio-2576, ¶ 45.
 {¶ 35} Appellant also argues that the request was not untimely because appellee objected to Dr. Nalluri's report. He contends that a trial court may consider attachments to an opposition motion even though they do not comply with Civ. R. 56(C) when the opposing party does not object. He further states that the failure to object may be deemed a waiver allowing the evidence to be considered for summary judgment purposes.
 {¶ 36} Civ. R. 56(C) states that proper evidence to support a summary judgment motion or an opposition motion are pleadings, depositions, answers to interrogatories, written admission, affidavits, transcripts of evidence and written stipulations of fact. Civ. R. 56(C). The rule does not permit another other type of evidence to be considered:
 {¶ 37} "Civ. R. 56(C) places strict limitations upon the type of documentary evidence that a party may use in support of or in opposition to summary judgment. Documents merely attached to a summary judgment motion, even though allegedly certified as official records, are not cognizable. Spier v. American Univ. of the Caribbean (1981),3 Ohio App.3d 28, 29. If a document does not fall within one of the categories of evidence listed in Civ. R. 56(C), it can only be introduced as proper evidentiary material when it is incorporated by reference in a properly framed affidavit *Page 9 
pursuant to Civ. R. 56(E). Biskupich v. Westbay Manor Nursing Home
(1986), 33 Ohio App.3d 220, 222." Hager v. Waste TechnologiesIndustries, 7th Dist. No. 2000CO45, 2002-Ohio-3466, ¶ 92 (we never decided whether materials that did not comply with Civ. R. 56(C), but not objected to, were permitted to be considered because we deemed the issue moot. ¶ 93-104).
 {¶ 38} Dr. Nalluri's report was not an affidavit, it was not testified to through deposition, and it was not accompanied by an affidavit authenticating it. Thus, under Division C of Civ. R. 56, it was not permitted to be considered.
 {¶ 39} That said, we have recently noted that although a court is not required to consider improper summary judgment evidence, it may consider such evidence if neither party objects. Rosenow v. Shutrump Assoc, 163 Ohio App.3d 500, 2005-Ohio-5313, ¶ 5; Chamberlin v. The BuickYoungstown Co., 7th Dist. No. 02CA115, 2003-Ohio-3486, at ¶ 6;Continenza v. Tablack, 7th Dist. No. 02CA250, 2003-Ohio-6719, at ¶ 14. That rule of law does not mean that a trial court must consider materials that do not comply with Civ. R. 56(C). The appellate courts, including our district, having continually used the word may, notmust when indicating that a trial court can consider noncomplying evidence. Martin v. Central Ohio Transit Auth. (1990),70 Ohio App.3d 83, 89 (if there is no objection to evidentiary matter not specifically authorized by Civ. R. 56(C), the court in its discretion may consider the material); Consumer Portfolio Servs., Inc. v. Staples, 6th Dist. No. S-06-031, 2007-Ohio-1531, ¶ 30; Loukinas v. Roto-Rooter Servs. Co.,167 Ohio App.3d 559, 2006-Ohio-3172, ¶ 22; Nationwide Mut. Fire Ins. Co. v.Wittekind (1999), 134 Ohio App.3d 285, 289.
 {¶ 40} Consequently, trial courts are not obligated to consider evidence that does not conform with Civ. R. 56(C). Thus, the probate court could have on its own, without objection from appellant, determined that the report was not permissible evidence under Civ. R. 56(C).
 {¶ 41} Appellant's argument that the motion for continuance was not untimely because appellee objected to Dr. Nalluri's report, ignores the fact that Dr. Nalluri's report, unaccompanied by an affidavit, was not in conformity with Civ. R. 56(C). As aforementioned, Civ. R. 56(C) is very clear as to what is proper evidence for supporting or opposing summary judgment. As the rule plainly states, "No evidence * * * may be considered except as stated in this rule." Case law is also abundantly clear that the type of report attached here is also not proper evidence under Civ. R. 56(C). Id. It is *Page 10 
also apparent from case law that the means to make the report proper evidence was to incorporate it by reference in an affidavit. Id.
 {¶ 42} Given the facts of this case, appellant could have complied with Civ. R. 56(C). Appellant's counsel indicated that he sought to get a written report from an expert medical doctor starting one day after the final pretrial of March 20, 2007. (Affidavit of Atty. Richards). He further stated that he received a written report from Dr. Nalluri dated June 26, 2007. (Affidavit of Atty. Richards). When appellee filed his motion for summary judgment on June 14, 2007, appellant should have been aware at that point that the report was needed to support his motion in opposition. Thus, appellant should have been aware that in order for him to make that report proper evidence under Civ. R. 56(C), the report would have to be accompanied by an affidavit. Furthermore, considering that the report was dated June 26, 2007, appellant had a couple weeks to obtain an affidavit for the report; on July 9, 2007 the non-oral summary judgment hearing was scheduled for July 30, 2007.
 {¶ 43} In summary, regarding the first three arguments, we find that the Civ. R. 56(F) motion was untimely and, given the facts, it was not an abuse of discretion for the probate court to deny the motion. It is true that at the time appellant moved for a Civ. R. 56(F) continuance, August 6, 2007, and when he filed the affidavit of Dr. Nalluri, August 14, 2007, the probate court had not journalized its decision. However, the probate court had set the non-oral hearing date for July 30, 2007. Granted, it was a non-oral hearing. But, trial courts set these types of dates so that parties know when opposition motions must be filed pursuant to Civ. R. 56. Civ. R. 56 makes it clear that summary judgment evidence must be submitted by the day prior to the hearing. Thus, appellant knew that the materials for summary judgment had to be filed by July 29, 2007. He could have filed the Civ. R. 56(F) motion at the time of the filing of the opposition motion or filed it instead of the opposition motion to ensure that the probate court would consider Dr. Nalluri's report. While this court may not have reached the same result as the trial court, given the facts, we cannot find that the trial court's decision was an abuse of discretion. Vanest,124 Ohio App.3d 525. These first three arguments are without merit.
 {¶ 44} Appellant's fourth argument under this assignment contends that the probate court ignored the Civ. R. 56(F) affidavit of Attorney Richards that was attached to the motion. In the judgment entry, the probate court lists dates of interest and the *Page 11 
filings that occurred on those dates. One of the dates listed is August 6, 2007. The Judgment Entry indicates that appellant's motion for continuance to obtain summary judgment affidavits was filed on that date. The probate court explained that the motion for continuance filed pursuant to Civ. R. 56(F) was filed seven days after the scheduled non-oral hearing. Thus, it denied the motion.
 {¶ 45} While the probate court does not state that it considered Attorney Richards' affidavit, by the court's indication of what was filed and its determination that the request for a continuance was untimely, it appears the probate court was finding that there was no excuse for the request being untimely. This is especially the case when Attorney Richards' affidavit indicates that the report was received by the end of June and the non-oral hearing was set for the end of July. Consequently, considering the above, we find no merit with appellant's fourth argument under this assignment of error.
 {¶ 46} Appellant's fifth and final argument under this assignment of error asserts that the expert's report, verified by the affidavit, was proper Civ. R. 56(C) evidence. Appellee, on the other hand, argues that Dr. Nalluri's medical opinion did not recite his credentials and he did not know decedent personally, therefore, the report was not proper Civ. R. 56(C) evidence.
 {¶ 47} This argument is rendered moot by our determination that the trial court did not abuse its discretion when it denied the Civ. R. 56(F) motion. It does not matter whether the report was properly authenticated by affidavit because the request for a continuance to file the affidavit and report was untimely.
 {¶ 48} In conclusion, this assignment of error is without merit. The probate court did not abuse its discretion in denying the Civ. R. 56(F) motion for continuance.
 SECOND ASSIGNMENT OF ERROR {¶ 49} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED BY GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES."
 {¶ 50} Appellant's argument under this assignment of error can be divided into two parts. The first part is partially an extension of the first assignment of error and argues that the trial court abused its discretion by failing to consider Dr. Nalluri's report and affidavit that were filed after the scheduled non-oral hearing. He argues that when considering Dr. Nalluri's report, summary judgment should not have been granted for appellee. In the second part, he alternatively argues that even without Dr. Nalluri's *Page 12 
report, summary judgment should not have been granted for appellee as there are genuine issues of material fact.
 {¶ 51} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Bonacorsi v. Wheeling Lake Erie Ry.Co., 95 Ohio St.3d 314, 2002-Ohio-2220, at ¶ 24. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ. R. 56(C).
 {¶ 52} Regarding appellant's first argument, if the probate court did not abuse its discretion in denying the Civ. R. 56(F) motion for continuance, then it did not abuse its discretion when it did not consider Dr. Nalluri's report and affidavit that was filed two weeks after the scheduled non-oral hearing. As was explained above, it is not an abuse of discretion for a trial court to fail to consider Civ. R. 56(C) materials that were filed outside the time limits.Vanest, 124 Ohio App.3d 525.
 {¶ 53} Given that, in this instance, there is no abuse of discretion in failing to consider the report, we will not address appellant's argument that when the report is considered, summary judgment should not have been granted for appellee. We will only address appellant's argument that, even without considering the report, summary judgment should not have been granted for appellee.
 {¶ 54} In appellee's motion for summary judgment, and on appeal, he asserts that there was no evidence that showed that decedent lacked the mental capacity to change his trust on April 5, 2005. Appellant contends that there was evidence to show such. Thus, the issue is whether there is a genuine issue of material fact as to the testamentary capacity of decedent on April 5, 2005, the day he amended his trust.
 {¶ 55} "Testamentary capacity" is a term of art that is generally used in the context of will contests. That said, the concept of a person's basic capacity to execute a legal document is equally instructive in the area of trusts. Lah v. Rogers (1998), 125 Ohio App.3d 164, 178, fn7.
 {¶ 56} The Ohio Supreme Court in Niemes v. Niemes (1917),97 Ohio St. 145, set forth the test for testamentary capacity: *Page 13 
 {¶ 57} "Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; second, to comprehend generally the nature and extent of his property; third, to hold in his mind the names and identity of those who have natural claims upon his bounty; fourth, to be able to appreciate his relation to the members of his family." Id. at paragraph four of the syllabus. See, also, Bland v. Graves (1993),85 Ohio App.3d 644, 652.
 {¶ 58} Attorney Nils Johnson, Jr. was deposed. He testified that he drafted the first trust for decedent in 1994, the first amendment in 2000 and the last amendment in 2005. (Johnson Depo. 6, 7, 8). Appellant's counsel inquired as to why the change to the trust was made in 2005. Johnson indicated that decedent's relationship with appellant changed. (Johnson Depo. 11). He stated that decedent had some resentment towards appellant when appellant got married and moved out. (Johnson Depo. 12). Johnson was asked at the 2005 amendment meeting if there was any difference in decedent's mental state; he answered there was not. (Johnson Depo 17). He was then asked whether decedent seemed as quick or sharp as he was previously. (Johnson Depo. 17). Johnson responded "Just normal." He then elaborated:
 {¶ 59} "I mean, you know we all go through the same process when you have a client who you suspect might be — have diminished capacity. In such a case — and that was not the case here, but in such a case had I had any question at all, I would have had my assistant, Sharon, come into the room with me when I was discussing everything. Typically she doesn't. She's doing things in the other room for other clients; and, you know, in an extreme case, I'll ask him who the president is and what they did for a living or engage in a long conversation just making pleasant talk to make sure that they're oriented and so forth. But that just was not even an issue in any way here." (Johnson Depo. 17-18).
 {¶ 60} He also indicated that there was a note in the file which stated that appellant had called about a month prior to the amendment being made and indicated that he thought decedent was in the beginning or middle stages of Alzheimer's. (Johnson Depo. 22). Johnson indicated that he was not sure if he saw the memo prior to the meeting or if he saw it after the meeting. He then stated: *Page 14 
 {¶ 61} "You know, kind of having the big picture in mind, the resentments and so forth, I mean, I've seen thousands, literally, as have you gentlemen who are all experienced estate planners, clients of over the years and been in many, many nursing home rooms beyond counting; and dealt with Alzheimer's patients forever, and you get a pretty good sense of if something's out of kilter, and that was not my sense here this day." (Johnson Dep. 24).
 {¶ 62} Johnson's assistant, Sharon Luklan, also testified. Her testimony was similar to that of Johnson's. She indicated that appellant had called the office about a month prior to decedent amending the trust and told her that he thought decedent was in the beginning stages of Alzheimer's. (Luklan Depo. 7). She stated that appellant told her that decedent had accused appellant of taking a gun from decedent's house. (Luklan Depo. 17).
 {¶ 63} She further testified that decedent came into the office on April 5, 2005 to amend the trust and that he seemed as sharps as always; she did not notice any decline in his mental faculties or mental abilities. (Luklan Depo. 8). She indicated that she would have been observant of his mental faculties due to the call she received a month prior from appellant. (Luklan Depo. 9).
 {¶ 64} Appellee was also deposed. He indicated that after appellant got married and left, he would visit decedent on a regular basis; he would phone him once or twice a week and would visit once a week. (John Spagnola Depo. 14). Appellee stated that he did not see any changes in his mental condition. However, he did point out that decedent became a little more withdrawn in later years. (John Spagnola Depo. 20).
 {¶ 65} Appellant's deposition, however, revealed that he thought decedent was losing his mental faculties. He testified that he had lived with decedent for 44 years. (Robert Spagnola Depo. 14). He got married in 1997 when he was 44 and moved to Florida. (Robert Spagnola Depo. 14). Appellant stated that from the time he left for Florida in 1997 until the time of decedent's death in 2006 he visited decedent three times. Once was in 1999, the second time was in May 2004 and the last time was May 2006 when decedent passed away. (Robert Spagnola Depo 17). He stated that they did keep in touch by phone once or twice a month. (Robert Spagnola Depo. 67).
 {¶ 66} Appellant explained that it was during the May 2004 visit that he noticed decedent seemed confused. (Robert Spagnola Depo. 67). He explained that the *Page 15 
decedent could not explain to him that in order to make a local telephone call the area code needed to be dialed. He also stated that decedent mixed up appellant's name and appellee's name. However, he also indicated that decedent had been doing that for years. (Robert Spagnola Depo. 70). As another example of decedent's alleged declining mental state, appellant averred that when talking on the phone with decedent he would ask appellant the same question over and over again. (Robert Spagnola Depo. 70-71). Appellant stated that these were signs of dementia and that he had done a lot of research on the web about dementia. (Robert Spagnola Depo. 71).
 {¶ 67} Appellant also referred to an incident that happened in March 2005. Decedent called appellant and accused appellant of stealing one of his guns. (Robert Spagnola Depo. 74). He stated that, "I knew that Joe was — at that time that there was dementia because it was a ludicrous charge." (Robert Spagnola Depo. 75). He indicated that decedent had given him multiple guns in 1997 after he got married.
 {¶ 68} He indicated that after that incident took place in March 2005, he and decedent conversed on the phone, but not as often as before. He indicated that when they talked, decedent knew who he was and he asked about appellant's family. (Robert Spagnola Depo. 82).
 {¶ 69} At the end of the deposition the following colloquy occurred:
 {¶ 70} "Q. Do you have any other facts or knowledge other than website information or newspaper articles or your self-diagnosis of Joe's condition that would indicate that on April 5, 2005, Joe was of unsound mind? We're not talking about your opinion; we're not talking about your assumption, not talking about hearsay or what you may have heard or whatever. Do you have any facts or knowledge personally that on that date he was of unsound mind? Yes or no.
 {¶ 71} "A. Joe was a very private person.
 {¶ 72} "Q. I'm asking you to answer a question. Yes or no.
 {¶ 73} "A. No.
 {¶ 74} "Q. Do you have any fact?
 {¶ 75} "A. I do not." (Robert Spagnola Depo. 87-88).
 {¶ 76} Appellant also had two of his friends, Joe Marino and Donald Hall, deposed. Marino testified that prior to appellant getting married in 1997, he went over to decedent's and appellant's house once or twice a month. (Marino Depo. 8). After that, Marino indicated that he only saw decedent twice before he died. One time was *Page 16 
at a light and he did not remember the date. The second time was at Giant Eagle in Canfield in December 2004. (Marino Depo. 10). Marino testified that he said hello to decedent, however, decedent did not recognize him. Marino stated that after he told decedent who he was decedent remembered him. (Marino Depo. 10). Marino indicated that decedent did not seem as sharp as he used to be. (Marino Depo. 12). However, Marino stated that he was able to converse with him in a normal manner, the response was just a little bit slower. (Marino Depo. 15).
 {¶ 77} Hall also testified that he went to appellant's and decedent's home once a month for years prior to appellant getting married. (Hall Depo. 8). He stated that when he saw decedent in 2004, decedent did not recognize him. (Hall Depo. 10). He testified that when they were talking, decedent would repeat a story several times. (Hall Depo. 10). However, other than repeating himself, Hall observed that decedent was not disoriented in place or time. (Hall Depo. 15). Hall also observed that the house was messier than usual, not filthy, but cluttered. (Hall Depo. 12).
 {¶ 78} All of the above testimony does not create a genuine issue of material fact. It does show that as decedent got older, he did not recognize people at first, but when they told him who they were he remembered them and was able to carry on a conversation. The attorney who drafted the trust, and all subsequent amendments, observed that on April 5, 2005, decedent was not of diminished capacity. His assistant also confirmed this observation. Furthermore, appellant admitted that other than his own self diagnosis he had no other facts to support his position that decedent was of unsound mind on April 5, 2005, when the trust was amended. Consequently, the probate court did not commit error when considering the above evidence and granted summary judgment for appellee.
 CONCLUSION {¶ 79} In conclusion, we reiterate that the Civ. R. 56(F) motion was untimely and the probate court did not abuse its discretion when it denied the motion. Furthermore, the probate court did not error when it granted summary judgment for appellee.
 {¶ 80} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
DeGenaro, P.J., concurs.
 Waite, J., concurs. *Page 1