[Cite as *Grim v. Cleveland Clinic Found.*, 2023-Ohio-713.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| JAMES GRIM, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111516 |
| v. | : | |
| CLEVELAND CLINIC FOUNDATION, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 9, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-918170

*Appearances:*

Michael T. Conway and Company, and Michael T. Conway, *for appellant*.

Frantz Ward LLP, Michael N. Chesney, Christopher G. Keim, and Megan E. Bennett, *for appellee*.

LISA B. FORBES, P.J.:

{¶ 1} James Grim ("Grim") appeals the trial court's journal entry granting summary judgment against him, and in favor of the Cleveland Clinic Foundation ("CCF"), regarding "the second cause of action in the complaint for race discrimination and retaliation in the alternative." Grim also appeals the jury verdict

rendered against him, and in favor of CCF, regarding his "wrongful termination in violation of Ohio public policy tort claim," arguing that it was against the manifest weight of the evidence. After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I. Facts and Procedural History

{¶ 2} Grim was employed by CCF from February 16, 1998, to June 13, 2017, when he was terminated. Beginning in 2003, Grim's position with CCF was as a police officer.

{¶ 3} On May 23, 2017, at approximately 11:00 p.m., Dr. Kain Onwuzulike ("Dr. Onwuzulike"), who was employed by CCF as a neurosurgeon, arrived at CCF's main campus to address a family emergency. Dr. Onwuzulike left his personal SUV in what is known as the "J Circle" at the front entrance. According to Dr. Onwuzulike, the valet attendant told him he could park there, and Dr. Onwuzulike left his cell phone number with the attendant.

{¶ 4} Grim was working at the front entrance of the CCF main campus on May 23, 2017. He "felt" that Dr. Onwuzulike's vehicle was blocking his police cruiser. According to Grim, Dr. Onwuzulike ignored him when he asked Dr. Onwuzulike to move the SUV. Grim had a parking boot placed on Dr. Onwuzulike's vehicle. According to Grim, he did this because Dr. Onwuzulike was "rude."

{¶ 5} The valet attendant called Dr. Onwuzulike and told him he needed to come back outside to attend to his vehicle. When Dr. Onwuzulike returned, a confrontation between Grim and Dr. Onwuzulike ensued. According to Grim, Dr.

Onwuzulike yelled, "B**ch! If you don't take that f****** boot off my car, I'm gonna kick your white cop a**!" Grim called for backup and placed Dr. Onwuzulike under arrest for disorderly conduct and aggravated menacing. According to Grim, Dr. Onwuzulike then said, "You're just a white bigot."

{¶ 6} On May 24, 2017, Grim prepared a CCF Police Incident Report. CCF launched an internal investigation of the incident between Grim and Dr. Onwuzulike and issued an Investigative Report.

{¶ 7} From these reports, CCF determined that Grim, along with backup officers who arrived on the scene, violated CCF's policies and procedures. CCF terminated Grim's employment, as reflected in a document titled "Termination," for "Improper Behavior/Misconduct" and "Poor Job Performance" because he was at the final step of CCF's progressive disciplinary policy. The Termination document established that Grim was subjected to the following "steps of Corrective Action * * * within the previous two years":

11/30/2015 — Suspension — Failure to perform in courteous manner

6/24/2015 — Written Warning — Poor work performance

10/17/2014 — Documented Counseling — Professional attitude/Poor work performance

{¶ 8} On July 12, 2019, Grim filed a complaint against CCF and Dr. Onwuzulike[1] alleging various causes of action including, relevant to this appeal: violations of R.C. 4112.02(A) (workplace race discrimination); violations of

---

[1] Dr. Onwuzulike died on January 6, 2021, and the court dismissed the claims against him on March 31, 2022.

R.C. 4112.02(I) (workplace retaliation); and wrongful termination in violation of public policy.

{¶ 9} The trial court granted in part and denied in part CCF's summary judgment motion on December 29, 2020. Pertinent to this appeal, the court granted summary judgment to CCF on Grim's race discrimination and retaliation claims. The court denied CCF's summary judgment motion on Grim's claim for wrongful termination in violation of public policy, finding that "what ultimately motivated [CCF in terminating Grim] is a factual question for the jury." This single claim went to trial, and on April 8, 2022, the jury found in favor of CCF.

{¶ 10} Grim now appeals, raising two assignments of error for review:

I. The trial court committed prejudicial and reversible error when it granted [CCF's] motion for summary judgment on the second cause of action in the complaint for race discrimination and retaliation in the alternative.

II. The jury verdict in the trial of * * * Grim's wrongful termination in violation of Ohio public policy tort claim in favor of [CCF] is against the manifest weight of the evidence and must be reversed under Ohio Appellate Rule 12(C)(2) given the jury response to interrogatory number one was * * * Grim did not prove by a preponderance of the evidence that his alleged efforts to enforce the laws of the state of Ohio were a deciding factor in [CCF's] decision to discharge him and the record including * * * CCF admissions show the exact opposite is true and cannot be reasonably disputed.

## II. Law and Analysis

### A. Summary Judgment

#### 1. Standard of Review

{¶ 11} Appellate review of a trial court's decision granting summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d

241 (1996). Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## 2. CCF's Evidence

{¶ 12} In the instant case, attached to CCF's summary judgment motion is a "termination document" that CCF Police Commander Derrick Stovall ("Stovall"), who was one of Grim's supervisors, presented to Grim upon Grim's termination. This "termination document" states in part as follows:

- Upon review of [CCF] cameras that showed your patrol vehicle and [Dr. Onwuzulike's] vehicle in question, video of evidence shows you were not "pinned in." You could have backed the vehicle up to respond or move if needed.

- In booting the vehicle you placed the driver in a position that he would have to speak with you to have his vehicle released. A confrontation did ensue escalating a minor late-night parking issue into a bigger encounter.

- Your report indicated that the driver took his finger and poked you in the chest — which initiated the arrest. Upon review of [CCF] cameras and questioning of officers on scene, this action could not be substantiated.

- The driver shared that his child was brought to [CCF] Emergency. With this in mind, you failed to show compassion for his situation and family. You continued the arrest in front of his family, transported him to our Temporary Holding Facility, and then down to Cleveland City Jail. This was not handled in a professional manner towards the driver which you knew to be an employee.

Officer Grim, you have a documented history of service issues. Your decisions and actions created an environment that was hostile and vindictive which violate[s] the following sections of the Corrective Action Policy:

- K. Unacceptable or unsatisfactory job performance * * *.

- L. Failure to perform in a courteous, conscientious, and caring manner in responding to the needs of a caregiver. * * *

- Z. Any conduct seriously detrimental to * * * fellow employees or [CCF] operations.

Due to the serious nature of this incident involving * * * a fellow employee, his family, and the patients that we serve, you are being administered a corrective action at the Termination level.

{¶ 13} CCF also attached several deposition transcripts to its summary judgment motion, the pertinent parts of which follow.

{¶ 14} Grim testified that the "J Circle" is not a no-parking zone; he put the boot on Dr. Onwuzulike's SUV because he felt Dr. Onwuzulike was dismissive and rude; he "agreed" that CCF's "appropriate protocol" was to "clear[] the use of" the boot with a supervisor prior to using it; and he arrested Dr. Onwuzulike for "stepping inside my reach and poking at my chest * * *."

{¶ 15} In Dr. Onwuzulike's deposition, he testified that he never saw Grim before he entered the hospital, and he denied making any racist comments to Grim when he came back outside. Dr. Onwuzulike testified that he was attempting to talk to the valet attendant who had called him on his cellphone when Grim stepped in his way and engaged him.

{¶ 16} CCF Police Chief David Easthon testified that Grim had no authority to place a boot on someone's car and that Grim's conduct that night was because Grim "was going to teach the doctor a lesson."

{¶ 17} Stovall testified that Grim had no authority to place a boot on someone's car. He further testified that CCF police does not own a boot, and Grim got the boot in question from the third-party vendor that CCF uses for valet parking. He also testified that Grim was terminated for three reasons: severity of Grim's conduct in escalating the incident with Dr. Onwuzulike; "report writing"; and Grim's disciplinary history.

{¶ 18} Additionally, CCF attached to its summary judgment motion a copy of CCF's internal Investigative Report concerning Grim's conduct on the night in question. A detective and an inspector from CCF's Department of Protective Services conducted the investigation, which included interviewing Grim, along with five other CCF police officers who responded to the scene after Grim's call for backup. Documentary evidence shows that three of the five other officers had supervisory power over Grim, and all three were disciplined by CCF for failing to supervise Grim regarding the parking boot and arresting Dr. Onwuzulike. Furthermore, during this investigation, Grim "stated he would not have placed a boot on the SUV, if given the chance to redo this situation which would have eliminated the circumstances leading to the arrest of Dr. Onwuzulike."

### 3. Grim's Evidence

{¶ 19} On the same day that Grim filed his brief in opposition to CCF's summary judgment motion, Grim filed an "Exhibit Series" containing various documents. Although these documents are not proper evidence under Civ.R. 56(C), CCF did not object to their admission, and we consider them in our review of this case. *Spagnola v. Spagnola*, 7th Dist. Mahoning No. 07 MA 178, 2008-Ohio-3087, ¶ 39.

### 4. Race Discrimination

{¶ 20} R.C. 4112.02(A) states that "[i]t shall be an unlawful discriminatory practice [f]or any employer, because of the race * * * of any person, to discharge without just cause * * * that person * * *."

> A plaintiff may prove intentional race discrimination in employment (1) by direct evidence that a termination or other adverse employment decision was motivated by race or (2) indirectly, by circumstantial evidence, using the burden-shifting method articulated by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) * * *.

*Williams v. PNC Bank, N.A.*, 8th Dist. Cuyahoga No. 111452, 2022-Ohio-4287, ¶ 54.

{¶ 21} In the case at hand, we glean from Grim's appellate brief that he is alleging a "direct evidence" race discrimination claim. Grim's brief states, in pertinent part, as follows:

> STOVAL specifically identified that "report writing" and "severity" of the incident with ONWUZULIKE as two of three grounds to fire GRIM *which makes this case a direct evidence case* by way of ratification of ONWUZULIKE's admitted conduct, so no inference is required to determine why GRIM was really fired; it was because STOVAL wanted to protect a race harasser ONWUZULIKE over GRIM.

(Emphasis added.)

{¶ 22} The Ohio Supreme Court has stated that "direct evidence" in a workplace discrimination case, "means that the plaintiff may establish a prima facie case directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory animus." *Mauzy v. Kelly Servs.,* 75 Ohio St.3d 578, 586-587, 664 N.E.2d 1272 (1996). "However, if the employee is unable to establish a causal link or nexus between the employer's discriminatory statements or conduct and [the employee's termination], then the employee has not provided direct evidence of discrimination." *Oleksiak v. John Carroll Univ.*, 8th Dist. Cuyahoga No. 84639, 2005-Ohio-886, ¶ 17.

{¶ 23} In determining whether a plaintiff has put forth direct evidence of discrimination, courts consider whether an employer's statements were: (1) "made by a decision-maker or by an agent within the scope of his employment"; (2) "related to the decision-making process"; (3) "more than merely vague, ambiguous or isolated remarks"; and (4) "made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir.2002). *See also Glemaud v. MetroHealth Sys.*, 8th Dist. Cuyahoga No. 106148, 2018-Ohio-4024, ¶ 51, 75 (noting that federal and Ohio standards for establishing discrimination are analogous and citing the *Peters* factors with approval).

{¶ 24} Upon review, we find that Grim has failed to present any direct evidence that CCF "was motivated by discriminatory animus" when terminating his employment.

{¶ 25} In applying the *Peters* factors to the case at hand, we find that the evidence in the record shows the following: (1) Dr. Onwuzulike was not a decision-maker in Grim's termination, and Dr. Onwuzulike did not make the comments at issue within the scope of his employment; (2) Dr. Onwuzulike's comments were unrelated to CCF's decision to terminate Grim; (3) Dr. Onwuzulike's comments appear to be isolated; and (4) Dr. Onwuzulike's comments were made approximately three weeks prior to Grim's termination. "'Stray remarks in the workplace, when unrelated to the decision-making process are insufficient to establish a prima facie case of discrimination, even when the statements are made by the decision-maker at issue.'" *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 384, 701 N.E.2d 1023 (8th Dist.1997), quoting *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989). In the instant case, not only do Dr. Onwuzulike's words appear to be a "stray comment," the evidence shows that Dr. Onwuzulike was not a decision-maker in Grim's termination.

{¶ 26} CCF submitted undisputed evidence, in the form of the "termination document," Grim's disciplinary history, and deposition testimony of CCF personnel and Grim himself, that CCF fired Grim after he unnecessarily escalated a parking issue. Grim argued in his brief in opposition to CCF's summary judgment motion that, although he "had some prior two year or older corrective disciplinary events at CCF * * * it is a fact those events were never about arresting a CCF Doctor for assault, never made independent grounds for employment termination, and [him] arresting ONWUZULIKE is the undeniable sole *determinative factor* for consideration that

lead to [his] termination * * *." (Emphasis sic.) Grim submitted no evidence to support his argument. This court has consistently held that "the party opposing summary judgment cannot rest on mere allegations." *Slavic Full Gospel Church, Inc., v. Vernyuk*, 8th Dist. Cuyahoga No. 97158, 2012-Ohio-3943, ¶ 27.

{¶ 27} There is simply no evidence in the record that CCF fired Grim because of Grim's race. Because there are no disputed facts regarding the reasons CCF terminated Grim's employment, CCF is entitled to judgment as a matter of law on Grim's race discrimination claim. Accordingly, the trial court did not err by granting summary judgment in favor of CCF on Grim's race discrimination claim.

### 5. Retaliation

{¶ 28} Pursuant to R.C. 4112.02(I), "[i]t shall be an unlawful discriminatory practice [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * *." This court has held that "to establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that [he or] she engaged in protected activity; (2) that the employer knew of [his or] her exercise of protected rights; (3) that [he or] she was the subject of adverse employment action; and (4) that there is a causal link between the protected activity and the adverse employment action." *Valentine v. Westshore Primary Care Assoc.*, 8th Dist. Cuyahoga No. 89999, 2008-Ohio-4450, ¶ 110. The *Valentine* Court further held that "'to engage in a protected opposition activity * * * a plaintiff must make an overt stand against suspected illegal discriminatory

action.'" *Id*. at ¶ 113, quoting *Comiskey v. Automotive Industry Action Group*, 40 F.Supp.2d 877, 898 (E.D.Mich.1999).

{¶ 29} Courts have defined a protected activity as follows: "An employee's activity is 'protected' for purposes of [retaliation] if the employee has 'opposed any unlawful discriminatory practice' (the 'opposition clause') or 'made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code' (the 'participation clause')." *Veal v. Upreach, L.L.C.*, 10th Dist. Franklin No. 11AP-192, 2011-Ohio-5406, ¶ 18.

{¶ 30} Grim argues that he engaged in a protected activity by writing an incident report concerning the events of the night of May 23, 2017, and this amounted to reporting "this event to his CCF superiors." According to Grim, his report is akin to "opposing any practice that the employee reasonably believes to be in violation of * * * Ohio RC 4112.02 et seq." (Emphasis sic.) Upon review, we disagree. Grim generated an incident report as part of his job duties as a police officer. Our review of this incident report shows that it is nothing more than Grim's narrative of the events leading up to Grim's arresting Dr. Onwuzulike. Nothing in this incident report refers to workplace discrimination or serves to oppose unlawful discrimination. In fact, Grim testified in his deposition that he wrote the incident report "to explain myself in a narrative that is easy to understand, that is chronological and that explains — I'm sorry, explains every step of the process in which it takes to arrest somebody."

**{¶ 31}** Furthermore, CCF presented evidence via its Senior Director of Human Resources Services that "[d]uring his employment, * * * Grim never submitted a complaint of discrimination."

**{¶ 32}** Upon review, we find that the record contains no evidence that Grim engaged in a protected activity. Therefore, Grim failed to establish the first prong of a retaliation claim. The fact that Grim did not engage in a protected activity is undisputed, and CCF is entitled to judgment as a matter of law on Grim's retaliation claim.

**{¶ 33}** The court did not err in granting partial summary judgment in favor of CCF on Grim's race discrimination and retaliation claims. Accordingly, Grim's first assignment of error is overruled.

### B. Jury Trial

#### 1. Manifest Weight of the Evidence – Standard of Review

> When reviewing the manifest weight of the evidence in a civil case, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

*Kavalec v. Ohio Express, Inc.*, 2016-Ohio-5925, 71 N.E.3d 660, ¶ 26 (8th Dist.). "We are guided by a presumption that the findings of the trier of fact are correct." *Id.* at ¶ 28.

## 2. Wrongful Termination in Violation of Public Policy

{¶ 34} The Ohio Supreme Court has listed the elements of a wrongful termination in violation of public policy claims as follows:

> (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Miracle v. Ohio Dept. of Veterans Servs.,* 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.2d 1110, ¶ 12, citing *Collins v. Rizkana,* 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995).

{¶ 35} The first two elements are questions of law to be decided by the court. *Collins* at 70. The third and fourth elements involve factual issues and are questions for the jury. *Id.* We start with the third and fourth prongs of the *Collins* test because only jury issues are raised under this assignment of error, and the causation and legitimate business justification elements are dispositive of this appeal. Upon review, we find that the evidence in the record supports the jury's finding that Grim did not prove "by a preponderance of the evidence that his alleged efforts to enforce the laws of the State of Ohio were a deciding factor in [CCF's] decision to discharge him [.]"

{¶ 36} Ohio courts have held that "the causation and overriding justification elements of a public policy wrongful discharge claim are equivalent to the issues of

whether a plaintiff was unlawfully discharged in a statutory retaliation claim." *Sells v. Holiday Mgt.*, 10th Dist. Franklin No. 11AP-205, 2011-Ohio-5974, ¶ 22. In *Sells*, the plaintiff sued his former employer for wrongful discharge in violation of public policy, arguing that he was fired "because of absences for attendance at criminal court proceedings pursuant to a subpoena." *Id.* at ¶ 10. "The trial court rejected Sells's argument and, instead, found 'overwhelming' evidence that Sells's termination was not motivated by absences due to subpoenas, as well as 'clear' evidence of numerous other reasons for Sells's termination." *Id.* at ¶ 12. The appellate court affirmed, holding the following: "The record simply contains no evidence from which reasonable minds could conclude that [the employer] terminated Sells for conduct related to the public policy against penalizing employees for absences resulting from compliance with a duly-served subpoena." *Id.* at ¶ 40.

{¶ 37} In the case at hand, during the course of a five-day jury trial, witness testimony, as well as documentary evidence, established that CCF terminated Grim's employment under its progressive discipline policy because Grim violated CCF policies concerning the incident with Dr. Onwuzulike on May 23, 2017. The following witnesses testified during Grim's case-in-chief: Grim; two CCF patrol officers, who were Grim's peers; a CCF lieutenant, who had supervisory authority over Grim; a CCF sergeant, who had supervisory authority over Grim; the CCF commander who terminated Grim; and the CCF Chief of Police, who approved Grim's termination.

{¶ 38} Grim testified that he wrote in the incident report that, due to Dr. Onwuzulike's vehicle, Grim "was unable to move [my patrol car] had incidents occurred that I needed to respond to." However, Grim "agreed" that, after viewing CCF's surveillance video, his patrol car was not blocked in by Dr. Onwuzulike's SUV. Additionally, we note that it is not logical to place a boot on a vehicle, thus immobilizing the vehicle, if you are concerned that this vehicle is blocking your vehicle from moving. Furthermore, Grim testified that "in hindsight," he would have acted differently that night and would have "let [Dr. Onwuzulike] go." Grim admitted his disciplinary history while working at CCF, and he admitted that he did not request authorization before putting a boot on Dr. Onwuzulike's car.

{¶ 39} Former CCF Lieutenant Jonathan Vosser ("Vosser") testified that CCF police officers receive special training in de-escalation, "which is very different from a city [police] department or a suburban [police] department." According to Vosser, CCF police officers "have to be more compassionate and empathetic towards people that are coming to our facilities." However, evidence in the record showed that Grim, who was on the last step of CCF's progressive discipline policy, escalated the situation with Dr. Onwuzulike, in contradiction to this special police training. Vosser also testified that he was responsible for evaluating Grim's performance as a CCF police officer, and Grim "would occasionally overreact during situations. He would sometimes escalate situations instead of trying to calm people down."

{¶ 40} Stovall testified that he made the decision to terminate Grim's employment based on the internal investigation of the May 23, 2017 incident, the

surveillance video footage (showing that Dr. Onwuzulike's SUV was not blocking Grim's vehicle and failing to show that Dr. Onwuzulike "poked" Grim), and Grim's admission to the investigators that he "overreacted, he would do things different." Stovall further testified that he made the decision to terminate Grim "because of his [disciplinary] history. It was also because of the severity of the incident * * * and it was also because of the report writing."

{¶ 41} The CCF employees who Grim called to testify consistently testified that Grim was not enforcing the law when he placed the boot on Dr. Onwuzulike's car; Grim escalated the situation, which resulted in Dr. Onwuzulike's arrest; and Grim was not "factual" in his reporting of the incident. Evidence in the record also showed that three of Grim's supervisors who were involved in the incident were disciplined for "not canceling [Dr.] Onwuzulike's arrest."

{¶ 42} Turning to CCF's case-in-chief, two witnesses testified. First, an inspector for CCF protective services testified that, in connection with the internal investigation he conducted, he interviewed Grim and six other CCF police department employees about the incident at question. This inspector generated a report and provided it to, among others, Stovall. Second, the chief security officer for CCF protective services testified as to the authenticity of the video surveillance footage.

{¶ 43} Upon review, we find that there is no evidence in the record that Grim's termination "was motivated by conduct related to the public policy," and there is no evidence in the record that CCF "lacked an overriding legitimate business

justification for the" termination. Therefore, Grim's claim for "wrongful termination in violation of [the] Ohio public policy" allowing police officers to "enforce the law" fails. *Compare Alexander v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 95727, 2012-Ohio-1737, ¶ 42. ("Clearly, public policy in this state would be seriously compromised (jeopardized) if employers were allowed to fire [their] police officers for upholding or enforcing the law * * *."). *See also* R.C. 1702.80(D). Accordingly, the jury verdict in favor of CCF, including "the jury response to interrogatory number one," on Grim's wrongful termination in violation of public policy claim is not against the manifest weight of the evidence, and Grim's second assignment of error is overruled.

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, PRESIDING JUDGE

MARY J. BOYLE, J., and
MICHAEL JOHN RYAN, J., CONCUR